### DAWES v. CONTINENTAL INS. CO. OF CITY OF NEW YORK.

No. 218.

District Court, E. D. Louisiana, Baton Rouge Division.

Oct. 22, 1932.

604

Charles A. Holcombe, of Baton Rouge, La., for plaintiff.

Philip S. Gidiere, of New Orleans, La., for defendant.

BORAH, District Judge.

H. C. Dawes, Jr., the plaintiff in this case, was insured for the term of one year against loss or damage by fire on eleven automobile trucks under a policy of insurance issued to him by the Continental Insurance Company of New York. On February 8, 1930, six of the trucks which were listed in the policy as having a value of $6,600 were completely destroyed by fire. The insured immediately reported the loss, whereupon the defendant company placed the claim in the hands of its adjusters, who after going into the matter were unable to agree with the assured as to the amount of the loss. The defendant then demanded an appraisal in accordance with the provisions of the policy, and, the plaintiff consenting, an agreement to appraise the loss was drawn up and signed by the respective parties and appraisers chosen; the insurer selecting Fred Oster and the insured Joe Arbour, and the two selecting C. J. Rose as umpire. The submission agreement, among other things, provided that the ap-

praisers "will act with strict impartiality in making an appraisement and estimate of the sound value and the loss and damage upon the property." For their government in making the appraisement it was also provided that "it is further expressly understood and agreed that in determining the sound value and the loss or damage upon the property, hereinbefore mentioned, the said appraisers are to make an estimate of the actual cash cost of replacing or repairing the same, or the actual cash value thereof, at and immediately preceding the time of the fire; and in case of depreciation of the property from use, age, condition, location or otherwise, a proper deduction shall be made therefor." It was further provided that "the award of said appraisers, or any two of them, made in writing, in accordance with this agreement, shall be binding upon both parties to this agreement."

The appraisers undertook to determine the amount of the loss and were unable to agree, and their matters of difference were submitted to the umpire and an award was made on March 12, 1930, in which the sound value of the six trucks immediately preceding the fire was agreed to be $1,457 and that the loss amounted to $1,457. An award showing said loss and damage was duly made, signed by Appraiser Fred Oster and Umpire C. J. Rose, and same was filed with the company. Shortly thereafter the defendant company issued and delivered its check to the plaintiff in the sum of $1,457 in payment of the loss in accordance with the award of the appraisers, and said check was accepted by the plaintiff with the explicit understanding that by doing so it would be without prejudice to his right to institute the present action which seeks to cancel and set aside the award.

The first ground of complaint upon which plaintiff relies is that no appraisal was had as contemplated by the policy and by the articles of submission because the sound value of the cars and the loss and damage were not figured separately by the appraisers, and it is argued that since they did not do this there never was any disagreement to be submitted to the umpire. The testimony bearing on this point shows that Oster appraised each truck separately but that Arbour did not, though Arbour did give the six trucks a value of $4,500, and when asked by Oster to itemize this figure he failed to do so and replied that this amount was the minimum the plaintiff had told him to stick for. This statement which Oster attributes to Arbour was reluctantly admitted by Ar-

bour to be true and the plaintiff has not seen fit to explain or deny it. Considering this testimony and the inferences to be drawn therefrom in the light of all the surrounding facts and circumstances of the case, there can be slight doubt but that Arbour was partisan and conceived it to be his duty to literally follow instructions and hold out for a high estimate. Under these circumstances it does not lie in plaintiff's mouth to complain of a situation for which he alone is responsible. To hold otherwise would be to sanction a course of improper conduct that would render voidable at the option of the wrongdoer every solemn obligation entered into which requires the appointment of appraisers as a mode of settling disputes.

■ But apart from this it is difficult to conceive the merits of plaintiff's theory that the sound value of the trucks and the loss and damage should have been figured separately. The submission agreement does not so provide; furthermore, we have here a situation where the trucks were totally destroyed in the fire, and therefore it necessarily follows that the loss and damage to the trucks was precisely the same figure as their sound value before the fire. All the appraisers had to do to arrive at the amount of the loss was to decide what was the actual cash cost of replacing the trucks, or the actual cash value thereof, at and immediately preceding the time of the fire and this is what they did. They visited the scene of the fire, checked the motor numbers, and thereafter Oster gave Arbour his figures showing valuations on the trucks totalling $1,200. Arbour, according to his own story which is favorable to plaintiff's case, thereupon told Oster that his figures were so far from his idea of the value of these units that there was not any use in his going into it any further, and he would have it appear that thereafter he refused to function or to have anything more to do with it. Why Arbour assumes this position is difficult to understand, for it is quite clear that thereafter he suggested to Oster the advisability of visiting New Orleans to look over the truck market. This suggestion was complied with, and the Mack and White companies were visited, and their representatives each placed values on the trucks that were substantially lower than Oster's figures. However, this added information did not bring the parties any closer together, so they decided to submit their differences to an umpire, and it was then that C. J. Rose was agreed upon. Thereupon they went to Rose's office to solicit his services and after explaining their mission stated to him that they had

a little difference. As further evidence of their disagreement, Rose testified that Arbour remained there debating with them for an hour and a half. Considering that this was a mere appraisal and that the technical rules of arbitration and award do not apply, I am of the opinion that the testimony shows a disagreement between the appraisers such as is contemplated by the policy of insurance.

■ But assuming that there was an award, the plaintiff contends that it should be set aside because the ridiculous figure at which the trucks were appraised constitutes clear proof of fraud; furthermore, it is urged that the said Oster was not an impartial nor a disinterested appraiser. The ground upon which it is claimed that the appraiser selected by the defendant was not disinterested is that he had been selected at different times by this defendant and other insurance companies to act as appraiser in cases similar to this. However, there is not the slightest evidence in this record to impugn his honesty or integrity, or to indicate that he acted from improper motives in making this award, or that he had any interest in the result; on the contrary, the evidence speaks for his competency to act in such capacity and this question is dismissed without further consideration. In support of the claim that the inadequacy of the award was so great as to amount to fraud, it is urged that the amount of the award was considerably less than the amount for which the trucks were insured and was less than the amount which the adjuster for the insurance company stated the trucks were worth. It would seem a complete answer thereto to simply state that the Valued Policy Law of Louisiana as embodied in Act No. 135 of 1900 does not apply to movable property, and consequently the insurance company is not precluded from contesting the amounts named in the policy. Furthermore, the defendant is not bound by the adjuster's offer in settlement which the plaintiff refused to accept, and same may not now be considered as fixing the value of the trucks as against the insurance company nor as waiving the company's right to an appraisement. See Hart v. Springfield Fire & Marine Insurance Co., 136 La. 114, 66 So. 558.

■ To succeed in this action the plaintiff must show, either that the appraisement was conducted in an improper manner, or that the award was the result of fraud or of gross error amounting to fraud. Mere inadequacy of the amount of the award or a mistake of judgment on the part of the appraisers in arriving at the sum to be allowed would not be

sufficient to authorize a court of equity to interfere unless the inadequacy is so great as to indicate corruption or bias on the part of the appraisers. See Burchell v. Marsh et al., 17 How. 344, 15 L. Ed. 96; Levin v. Northwestern National Insurance Co. of Milwaukee (C. C.) 185 F. 981. In an effort to sustain this burden, secondary evidence was offered by the plaintiff to show the amounts which he claims to have paid for these admittedly second and third hand trucks; but it is not clear from his testimony whether or not these amounts are truly indicative of value because plaintiff repeatedly stated that he bought these trucks without taking the trouble to find out in what year they were manufactured. He justifies this rather unusual course of dealing by stating that he was only interested in the condition of the trucks and the service left in them. There can be slight doubt but that age is an important element in determining how much service or use was left in the trucks and a prudent purchaser would undoubtedly have so regarded it, but plaintiff admittedly did not; consequently, his testimony on this point must be considered as having doubtful value. The other supporting witnesses throw little light on the value of these trucks either because of their lack of knowledge of the subject-matter concerning which they testified or because of their failure to state the facts upon which their conclusions were based. Considering the testimony as a whole in the light of the undisputed fact that these trucks were all old, secondhand trucks ranging in ages from seven to twelve years at the time of the fire, and that their actual cash value was exceedingly small, I am persuaded that the award was not grossly inadequate if inadequate at all.

■ The remaining ground of attack charges, "That the said alleged appraisement was based upon the alleged price of second-hand cars of similar type and make in the city of New Orleans, which was an improper method of ascertaining the correct valuation of the property destroyed;" and in support thereof evidence was offered to show that the trucks should have been appraised on the basis of their value to the owner. However, this opinion testimony is not controlling, as it is clear from the policy herein sued on, as well as from the articles of submission, that the appraisers in determining the sound value and the loss or damage upon the property were required to make an estimate of the actual cash cost of replacing the trucks or the actual cash value thereof, at and immediately preceding the time of the fire, and this they unquestionably did.

■ The plaintiff has the burden of sustaining the allegations of his bill. In this he has wholly failed, and it must be dismissed at his cost. It is ordered accordingly.