396 So.2d 208 (1981)
Barbara A. LEE, Appellant,
v.
Martin L. MARCUS, Individually and Marvell Stables, Inc., a Florida Corporation, Appellees.
No. 80-1117.
District Court of Appeal of Florida, Third District.
March 10, 1981.
Rehearing Denied April 20, 1981.
Leib, Martinez & Mark and Jose E. Martinez, Coral Gables, for appellant.
Martin Levinson and Stephen R. Schnieder, Miami, for appellees.
Before BARKDULL, SCHWARTZ and NESBITT, JJ.
SCHWARTZ, Judge.
This is an appeal from a final judgment confirming an arbitration award over the appellant Lee's contention that it had been tainted by fraud or corruption within the meaning of Section 682.13(1)(a), (b), Florida Statutes (1979). The foundation of the claim, as now presented to this court, is that the individual appointed by the appellees to the tripartite arbitration was not neutral or unbiased because of his unrevealed association with their attorney. We reject this argument and affirm.
The underlying controversy concerned the expenses required for a thoroughbred racehorse of which a 75% share was owned by Barbara Lee and 25% by Marvell Stables, Inc. Their partnership agreement provided for the resolution of any dispute by a three-person board of arbitrators, with one "selected" by each party and the third chosen by those two.[1] After Lee filed an action in the circuit court, concerning the expense issue, the trial judge ordered the parties to arbitrate in accordance with that clause.[2] Ms. Lee chose George Onett. After *209 Marvell's first choice was unable to serve, it selected Jerome Amster, identified by his home address and telephone number, as its arbitrator. Onett and Amster chose Harry Benson as the neutral arbitrator and the case proceeded to hearing, which took place with no impropriety and in a manner concerning which the appellant does not complain.[3] The result was a 2-1 decision, with Benson and Amster in the majority, in favor of Marvell. Lee then moved to set aside the award on the ground that Amster was not a legally acceptable member of the arbitration panel. The basis of this contention was that he was in fact an attorney who shared offices and services with Marvell's lawyer and that this had been concealed until after the arbitration by the calculatedly misleading use of his home rather than his business address and phone number. The trial judge denied the motion and confirmed the award. These rulings were correct.
As the very nature of the widely-employed three-person arbitration panel itself implies, the arbitrators designated by the parties are not intended to be entirely disinterested or impartial. To the contrary, each is expected to be, in the vernacular, no more than unprejudiced on the side of the contestant which has appointed him. As was accurately said in Finkelstein v. Smith, 326 So.2d 39, 40 (Fla. 1st DCA 1976),
[a]rbitrators appointed by disputants to a tripartite panel are expected by the disputants and should be understood by the courts to act as partisans only one step removed from the controversy.
The Florida Arbitration Code embodies this view. Section 682.13(1)(b), Florida Statutes (1979) provides that an award shall be vacated when
(b) [t]here was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or umpire or misconduct prejudicing the rights of any party.
Since "evident partiality" is pointedly a basis for vacation only in the case of a neutral arbitrator, it is apparent that this provision reflects an understanding of the not disinterested nature of the party-appointed arbitrator.
Accordingly, it has been held, seemingly without exception, that  absent overt corruption or misconduct in the arbitration itself, which is not alleged here  no arbitrator appointed by a party[4] may be challenged on the ground of his relationship to that party.[5] The leading case in the field is Astoria Medical Group v. Health Ins. Plan of Greater New York, 11 N.Y.2d 128, 227 N.Y.S.2d 401, 182 N.E.2d 85 (1962), in which the following appears:
[T]he very reason each of the parties contracts for the choice of his own arbitrator is to make certain that his `side' will, in a sense, be represented on the tribunal. And, it was with that thought in mind that this court held the choice of an arbitrator *210 to be a `valuable' contractual right not lightly to be disregarded... .
* * * * * *
The right to appoint one's own arbitrator, which is of the essence of tripartite arbitration and which was vindicated in the Lipschutz case, would be of little moment were it to comprehend solely the choice of a `neutral'. It becomes a valued right, which parties will bargain for and litigate over, only if it involves a choice of one believed to be sympathetic to his position or favorably disposed to him.
* * * * * *
In the light of accepted practice, which sanctions and contemplates two non-neutral arbitrators on a tripartite board, the parties must be deemed to have intended that each was to be free to appoint any arbitrator desired, however close his relationship to it or to the dispute. Moreover, this conclusion is reinforced by the fact that the provision relating to arbitration contains no word of limitation on the identity, status or qualifications of the arbitrators; had the parties intended that their appointees be completely impartial or disinterested, they could have readily so provided. 227 N.Y.S.2d at 405, 182 N.E.2d at 88.
Accord, e.g., First National Bank in Cedar Falls v. Clay, 231 Iowa 703, 2 N.W.2d 85, 92 (1942) ("Choosing arbitrators wholly disinterested is an admirable standard to aspire to, but the parties seldom do that, and if all awards were set aside in which it was not done, few awards would stand."); Petition of Dover Steamship Co., 143 F. Supp. 738, 741 (S.D.N.Y. 1956) ("[T]he designation by the parties themselves of arbitrators who may not be completely disinterested, accords with the generally accepted practice in arbitration proceedings of this type. In such case, it is quite frankly recognized that the `neutral' arbitrator is the one selected by the parties' arbitrators.")
Consistent with these principles, ties between appointed arbitrators and parties much closer than those between Amster and the appellees have been repeatedly approved. E.g., Astoria Medical Group v. Health Insurance Plan of Greater New York, supra (incorporator, director, and past president of corporate party); Karpinecz v. Marshall, 14 A.D.2d 569, 218 N.Y.S.2d 88 (1961) (attorney of party); Modern Brokerage Corp. v. Massachusetts Bonding & Ins. Co., 56 F. Supp. 696 (S.D.N.Y. 1944) (surveyor previously repeatedly employed by party); see, Carol City Utilities, Inc. v. Gaines Construction Co., 201 So.2d 242 (Fla.3d DCA 1967), cert. denied, 210 So.2d 221 (Fla. 1968). It is plain, therefore, that the fact that Amster shared space with Marvell's attorney provides no basis for vitiating the award.
The appellant strongly emphasizes, however, that Amster's relationship to Marvell, such as it was, was affirmatively concealed from her until after she had lost. We agree that the apparently deliberate choice of the address and phone number reflects, at best, a lack of candor which was totally unacceptable and should not be repeated. Nevertheless, it cannot change the result of this case. We conceive that one may suffer legal detriment by failing to disclose particular information only when those facts are such that the opposite side may base some meaningful action upon them; in other words, those which are material to the matter at hand. See, Gruman v. Sam Breedon Construction Co., 148 So.2d 759 (Fla.2d DCA 1963), app. dismissed, 155 So.2d 756 (Fla. 1963); 37 Am.Jur.2d, Fraud and Deceit, § 177 (1968). But, in this case, even if Lee had known all about Amster and his relationship with her opponents, she could not, as we have seen, have successfully challenged his role as an arbitrator before the award  just as she is unable to do so afterwards. Thus, the concealment made no difference. See, North American Steel Corp. v. Siderius, Inc., 75 Mich. App. 391, 254 N.W.2d 899 (1977); San Luis Obispo Bay Properties, Inc. v. Pacific Gas and Electric Co., 28 Cal. App.3d 556, 104 Cal. Rptr. 733 (1972).[6] In short, the appellees or *211 their representatives sought to hide the truth when it wouldn't have hurt them to reveal it. However the propriety of those actions may appear to other, less earthly tribunals, they have no legal consequences in this one.
Affirmed.
NOTES
[1] The precise provision of the contract is that,

In the event of any dispute arising from or as a result of this Agreement, such dispute shall be determined by arbitration of three (3) individuals, one selected by MARVELL STABLES, INC., one selected by Buyer, and a third by the two so selected, and the decision of such arbitrator shall be binding upon all parties.
Under this clause, it would appear that the decision of the third or neutral arbitrator  as opposed to that of the arbitration  is binding. Although neither side has referred to this fact, we rely upon it as additional support for our conclusion that the identity of Marvell's appointee did not infect the ultimate result, in which the third arbitrator of course concurred.
[2] This order provided for each party "to select an impartial arbitrator of their choice." Although the appellant argues to the contrary, we ascribe no significance to the court's perhaps inadvertent use of the word "impartial," which does not appear in the contract itself. See, Astoria Medical Group v. Health Insurance Plan of Greater New York, infra, 227 N.Y.S.2d at 405, 182 N.E.2d at 88. In any event, "impartial" must be given only the meaning implied by the authorities which are discussed infra; that is, as to an arbitrator appointed by a party, one which does not exclude a non-corrupt partisanship.
[3] Lee refers in passing to the possibility that Amster gained some information about the case from some extra-hearing source, presumably the appellees. As she herself seems to recognize, however, such a discussion is not improper, because "[i]t would be unrealistic to expect a party engaged in an arbitration dispute to nominate an arbitrator without telling him what the dispute is about." Stef Shipping Corp. v. Norris Grain Co., 209 F. Supp. 249, 253 (S.D.N.Y. 1962); First National Bank in Cedar Falls v. Clay, 231 Iowa 703, 2 N.W.2d 85, 92 (1942).
[4] Compare Finkelstein v. Smith, supra, in which a contestant unsuccessfully attempted to appoint himself an arbitrator.
[5] Compare the Florida cases cited by the appellant, Cassara v. Wofford, 55 So.2d 102 (Fla. 1951); Tassinari v. Loyer, 189 So.2d 651 (Fla.2d DCA 1966) and Gaines Construction Co. v. Carol City Utilities, Inc., 164 So.2d 270 (Fla.3d DCA 1964), all of which involved claims of bias or misconduct by the neutral third or sole arbitrator.
[6] Compare, Commonwealth Coatings Corp. v. Continental Casualty Co., 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968), upon which the appellant heavily relies, which involved the failure to reveal prior business relationships between one of the parties and the neutral arbitrator. See note 5, supra.