714 So.2d 547 (1998)
Clemente RIOS and Rosa Rios, his wife, Petitioners,
v.
TRI-STATE INSURANCE COMPANY a foreign insurance company, Respondent.
No. 98-260.
District Court of Appeal of Florida, Third District.
June 24, 1998.
*548 Lauri Waldman Ross, Miami; Marks & Truppman, Miami, for petitioners.
Freud & Abraham and Peter E. Abraham, Miami, for respondent.
Before COPE, GODERICH and SHEVIN, JJ.
COPE, Judge.
Clemente and Rosa Rios ("the insureds") petition for a writ of certiorari, seeking to quash a discovery order entered preliminary to appraisal under an insurance policy.[1] We grant the petition in part and deny it in part.

I.
The insureds filed suit to compel appraisal of a Hurricane Andrew claim under a homeowners' policy issued by respondent Tri-State Insurance Company. The insureds designated East Coast Appraisers, Inc., as their appraiser.
The appraisal clause in this insurance contract requires each party to select "a competent, independent appraiser" (emphasis added), and the two party-designated appraisers will then select a "competent, impartial umpire."[2]
*549 The insurer moved to dismiss the appraisal suit arguing, among other things, that the insureds' appraiser, East Coast, was not "independent" within the meaning of the appraisal clause because East Coast's compensation was based on a contingency percentage of the insureds' recovery. The insurer asked the insureds to divulge the compensation arrangement with East Coast, and the insureds refused. The insurer then propounded discovery on that issue, to which the insureds objected. The trial court entered an order compelling discovery of the compensation arrangement, which order the insureds now seek to quash.[3]
At oral argument, the insureds acknowledged that East Coast is to be compensated based on a contingency percentage of the award.

II.
The threshold question presented by the parties is how to interpret the term "independent appraiser" as used in the insurance policy. The parties are free by contract to specify the credentials of party-appointed appraisers, and have done so in this instance. See Lee v. Marcus, 396 So.2d 208, 210 (Fla. 3d DCA 1981) (recognizing that parties may by contract place words of limitation on the identity, status, or qualifications of arbitrators). The insurance contract in this case restricts the choice to an "independent appraiser" but the policy contains no definition and neither the parties nor we have located case law addressing the point.[4]
Dictionary definitions of "independent" include "not subject to control, restriction, modification, or limitation from a given outside source," Black's Law Dictionary 770 (6th ed.1990), and "not subject to control by others...." Webster's Third New International Dictionary 1148 (1986). We conclude that this language calls for the appointment of an outside appraiser, unaffiliated with the parties. This means that a party cannot appoint himself, herself, or itself, see Finkelstein v. Smith, 326 So.2d 39, 40 (Fla. 1st DCA 1976), nor can a party appoint the party's employee. If a firm is designated to do the appraisal, it must be unaffiliated with the appointing party, that is, it cannot be a firm in which the appointing party has an ownership interest.
The insurer urges us to go farther and rule that an appraiser cannot be "independent" whose pay is based, in whole or in part, on a contingent fee percentage of the award. The insurer contends that a contingent fee arrangement gives the appraiser a direct financial interest in the award, and renders the appraiser not "independent" under this insurance contract. We acknowledge that two courts have accepted this reasoning and forbid contingent fee compensation for a party-appointed designee, either across the board, see Aetna Cas. & Sur. Co. v. Grabbert, 590 A.2d 88 (R.I.1991) (arbitration),[5] or based on the language of the insurance policy. See Central Life Ins. Co. v. Aetna Cas. & Sur. Co., 466 N.W.2d 257 (Iowa 1991) (appraisal).[6] We decline to apply those cases here.
First, the appraisal clause now before us states that "[e]ach appraiser shall be paid by the party selecting that appraiser." It does not limit the type of compensation which may be paid. The insurance policy must be read favorably to the insured. See Berkshire Life Ins. Co. v. Adelberg, 698 So.2d 828, 830 (Fla. 1997). That being so, we decline to interpret the term "independent" (which is not defined *550 in the policy) to limit the type of compensation which can be paid.
Second, we think the more workable approach to this issue is found in the Code of Ethics for Arbitrators in Commercial Disputes ("Code of Ethics"), promulgated jointly by the American Arbitration Association ("AAA") and American Bar Association ("ABA").[7] Canon IIA(1) of the Code states that "persons who are requested to serve as arbitrators should, before accepting, disclose (1) any direct or indirect financial or personal interest in the outcome of the arbitration...."[8] Such disclosure is required of nonneutral as well as neutral arbiters. See Code of Ethics, Canon VIIB. The theory is that the disclosure is for the benefit not only of the appointing party, "but also for the benefit of the other parties and arbitrators so that they may know of any bias which may exist or appear to exist." Id.; see also Commonwealth Coatings Corp. v. Continental Cas. Co., 393 U.S. 145, 152, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968) (White, J, concurring) (stating that arbitrators should err on the side of disclosure); Lee v. Marcus, 396 So.2d at 210, (concealment of relationship between arbitrator and appointing party "reflects, at best, a lack of candor which was totally unacceptable and should not be repeated").
In this appeal, the insureds concede that the fee agreement with East Coast is based on a contingency fee percentage of the recovery. Since that amounted to a "direct ... financial ... interest in the outcome of the arbitration," Code of Ethics, Canon IIA(1), it follows that there should have been voluntary disclosure.
The next question is whether a direct or indirect financial interest in the outcome of the arbitration requires the disqualification of a party-appointed arbitrator. Under the Code of Ethics, it does not. Id. Canon VIB(2). The balance struck by the Code is that such an interest will not be a basis for disqualification, but it must be disclosed so that the other arbitrators are aware of it before they proceed with their work. In this way, the process will operate on the basis of fair disclosure, and party-appointed appraisers may make full disclosure without fear that the disclosure will serve as a basis for disqualification. "[T]he act of disclosure serves as a cure rather than an excuse for intervention by the courts." Perez v. Mid-Century Ins. Co., 85 Wash.App. 760, 934 P.2d 731, 734 (1997). The approach taken by the Code of Ethics allows the arbitration process to proceed smoothly, with a minimum of preliminary decisions for determination by the court. See Phillips v. General Accident Ins. Co. of America, 685 So.2d 27, 29 (Fla. 3d DCA 1996) (enumerating preliminary questions); Lee v. Marcus, 396 So.2d at 209-11.[9]
In the present case, the trial court's instinctive reaction was correct: the existence of a contingent fee agreement for an appraiser is an item which calls for disclosure. For the reasons outlined, however, we quash the order compelling discovery and direct instead that the parties make the disclosures required by the Code of Ethics.

III.
The insurer has also raised the coverage defense that the insureds had released the insurer, and propounded discovery relevant to that defense. The trial court allowed discovery *551 to proceed on that issue, and the insureds seek to quash that order as well. The insureds contend that all proceedings in the trial court must be stayed pending submission of the claim to the appraisers. We disagree.
Writing in the context of appraisal, this court has said that "the order in which the issues of damages and coverage are to be determined respectively by arbitration and the court should be left within the discretion of the trial judge." Paradise Plaza Condominium Ass'n, Inc. v. Reinsurance Corp. of N.Y., 685 So.2d 937, 941 (Fla. 3d DCA 1996) (en banc) (citations omitted). There being no departure from the essential requirements of law, certiorari is denied on this point.
Certiorari granted in part and denied in part.

APPENDIX

EXCERPTS FROM

THE CODE OF ETHICS FOR ARBITRATORS IN COMMERCIAL DISPUTES

Preamble
....
Various aspects of the conduct of arbitrators, including some matters covered by this code, may be governed by agreements of the parties, by arbitration rules to which the parties have agreed, or by applicable law. This code does not take the place of or supersede such agreements, rules, or laws and does not establish new or additional grounds for judicial review of arbitration awards.
....

CANON II.

An Arbitrator Should Disclose any Interest or Relationship Likely to Affect Impartiality or Which Might Create an Appearance of Partiality or Bias.

Introductory Note
This code reflects the prevailing principle that arbitrators should disclose the existence of interests or relationships that are likely to affect their impartiality or that might reasonably create an appearance that they are biased against one party or favorable to another. These provisions of the code are intended to be applied realistically so that the burden of detailed disclosure does not become so great that it is impractical for persons in the business world to be arbitrators, thereby depriving parties of the services of those who might be best informed and qualified to decide particular types of cases.[9]
This code does not limit the freedom of parties to agree on whomever they choose as an arbitrator. When parties, with knowledge of a person's interests and relationships, nevertheless desire that individual to serve as an arbitrator, that person may properly serve.

Disclosure
A. Persons who are requested to serve as arbitrators should, before accepting, disclose
(1) any direct or indirect financial or personal interest in the outcome of the arbitration;
(2) any existing or past financial, business, professional, family or social relationships which are likely to affect impartiality or which might reasonably create an appearance of partiality or bias. Persons requested to serve as arbitrators should disclose any such relationships which they personally have with any party or its lawyer, or with any individual whom they have been told will *552 be a witness. They should also disclose any such relationships involving members of their families or their current employers, partners or business associates.
B. Persons who are requested to accept appointment as arbitrators should make a reasonable effort to inform themselves of any interests or relationships described in the preceding paragraph A.
C. The obligation to disclose interests or relationships described in the preceding paragraph A is a continuing duty which requires a person who accepts appointment as an arbitrator to disclose, at any stage of the arbitration, any such interests or relationships which may arise, or which are recalled or discovered.
D. Disclosure should be made to all parties unless other procedures for disclosure are provided in the rules or practices of an institution which is administering the arbitration. Where more than one arbitrator has been appointed, each should inform the others of the interests and relationships which have been disclosed.
E. In the event that an arbitrator is requested by all parties to withdraw, the arbitrator should do so. In the event that an arbitrator is requested to withdraw by less than all of the parties because of alleged partiality or bias, the arbitrator should withdraw unless either of the following circumstances exists.
(1) If an agreement of the parties, or arbitration rules agreed to by the parties, establishes procedures for determining challenges to arbitrators, then those procedures should be followed; or,
(2) if the arbitrator, after carefully considering the matter, determines that the reason for the challenge is not substantial, and that he or she can nevertheless act and decide the case impartially and fairly, and that withdrawal would cause unfair delay or expense to another party or would be contrary to the ends of justice.
....

CANON VII.

Ethical Considerations Relating to Arbitrators Appointed By One Party

Introductory Note
In some types of arbitration in which there are three arbitrators, it is customary for each party, acting alone, to appoint one arbitrator. The third arbitrator is then appointed by agreement either of the parties or of the two arbitrators, or, failing such agreement, by an independent institution or individual. In some of these types of arbitration, all three arbitrators are customarily considered to be neutral and are expected to observe the same standards of ethical conduct. However, there are also many types of tripartite arbitration in which it has been the practice that the two arbitrators appointed by the parties are not considered to be neutral and are expected to observe many-but not all-of the same ethical standards as the neutral third arbitrator. For the purposes of this code, an arbitrator appointed by one party who is not expected to observe all of the same standards as the third arbitrator is called a "nonneutral arbitrator." This Canon VII describes the ethical obligations that nonneutral party-appointed arbitrators should observe and those that are not applicable to them.
In all arbitrations in which there are two or more party-appointed arbitrators, it is important for everyone concerned to know from the start whether the party-appointed arbitrators are expected to be neutrals or nonneutrals. In such arbitrations, the two party-appointed arbitrators should be considered nonneutrals unless both parties inform the arbitrators that all three arbitrators are to be neutral or unless the contract, the applicable arbitration rules, or any governing law requires that all three arbitrators be neutral.
It should be noted that, in cases conducted outside the United States, the applicable law might require that all arbitrators be neutral. Accordingly, in such cases, the governing law should be considered before applying any of the following provisions relating to nonneutral party-appointed arbitrators.
....

*553 B. Obligations under Canon II
Nonneutral party-appointed arbitrators should disclose to all parties, and to the other arbitrators, all interests and relationships which Canon II requires be disclosed. Disclosure as required by Canon II is for the benefit not only of the party who appointed the nonneutral arbitrator, but also for the benefit of the other parties and arbitrators so that they may know of any bias which may exist or appear to exist. However, this obligation is subject to the following provisions.
(1) Disclosure by nonneutral arbitrators should be sufficient to describe the general nature and scope of any interest or relationship, but need not include as detailed information as is expected from persons appointed as neutral arbitrators.
(2) Nonneutral arbitrators are not obliged to withdraw if requested to do so by the party who did not appoint them, notwithstanding the provisions of Canon II.E.
....
NOTES
[1] We treat the nonfinal appeal as a petition for writ of certiorari. See infra note 3.
[2] The appraisal clause states:

6. If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of record in the state where the residence premises is located to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement by any two of these three shall set the amount of loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.
(Emphasis added).
[3] The insureds filed a nonfinal appeal on the theory that by granting discovery the trial court had necessarily delayed the appraisal, and therefore the discovery order could be viewed as an order determining "the entitlement of a party to arbitration...." Fla. R.App. P. 9.130(a)(3)(C)(v). However, the trial court was never asked to rule, one way or the other, on the insureds' entitlement to arbitration, and the order thus is not appealable under Rule 9.130. We instead treat the appeal as a petition for writ of certiorari. See Johnson v. Citizens State Bank, 537 So.2d 96, 97-98 (Fla.1989).
[4] The appraisal clause also requires that the appraiser be competent, but there is no issue raised on the issue of competency.
[5] The arbitration clause at issue in Grabbert simply called for each party to select "an arbitrator." Id. at 89.
[6] The appraisal clause in Central Life required each party to select "a competent and disinterested appraiser." Id. at 258 n. 1.
[7] Excerpts from the Code of Ethics are attached as an appendix to this opinion.

The full Code of Ethics may be found in Martin Domke, Commercial Arbitration app. A-4 (1997), as well as at and in the PLI/Litigation database in WESTLAW.
[8] Canon IIA(2) goes on to require disclosure also of:

(2) any existing or past financial, business, professional or social relationships which are likely to affect impartiality or which might reasonably create an appearance of partiality or bias. Persons requested to serve as arbitrators should disclose any such relationships which they personally have with any party or its lawyer, or with any individual whom they have been told will be a witness. They should also disclose any such relationships involving members of their families or their current employers, partners or business associates.
[9] The Rhode Island court in Grabbert took the position that the Code of Ethics prohibited a contingent fee for a party-appointed arbitrator, see 590 A.2d at 94-95, but we conclude that in so holding, the court misapprehended the Code's position on this point.
[9] In applying the provisions of this code relating to disclosure, it might be helpful to recall the words of the concurring opinion, in a case decided by the U.S. Supreme Court, that arbitrators "should err on the side of disclosure" because "it is better that the relationship be disclosed at the outset when the parties are free to reject the arbitrator or accept him with knowledge of the relationship." At the same time, it must be recognized that "an arbitrator's business relationships may be diverse indeed, involving more or less remote commercial connections with great numbers of people." Accordingly, an arbitrator "cannot be expected to provide the parties with his complete and unexpurgated business biography," nor is an arbitrator called on to disclose interests or relationships that are merely "trivial" (a concurring opinion in Commonwealth Coatings Corp. v. Continental Casualty Co., 393 U.S. 145, 151-152, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968)).