DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**STATE FARM FLORIDA INSURANCE COMPANY,**
Appellant,

v.

**JOSEPH VALENTI, JR.,**
Appellee.

No. 4D19-205

[December 11, 2019]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; William W. Haury, Jr., Judge; L.T. Case No. CACE-18-004015.

Kara Berard Rockenbach, David A. Noel, and Daniel M. Schwarz of Link & Rockenbach, PA, West Palm Beach, for appellant.

Matthew G. Struble and Christine D. Skubala of Struble, P.A., Fort Lauderdale, for appellee

PER CURIAM.

An insurer appeals a final judgment entered against it in favor of its insured. The sole issue on appeal relates to the meaning of "disinterested appraiser" in the insurance policy's appraisal clause. Can an insured's public adjuster later be appointed the insured's disinterested appraiser? The circuit court found that the public adjuster could. On the facts here, we disagree and reverse the circuit court's judgment.

A leak in the insured's home caused water damage. Two weeks later, the insured signed an agreement with a public adjuster. As part of the agreement, the insured assigned 20% of any recovery from the insurance company to the public adjuster. The agreement stated that "[a]s security for payment of policyholder's obligations to the [public adjuster]. . . , the Policyholder hereby assigns the [public adjuster] that portion of the insurance proceeds sufficient to pay the [public adjuster]'s fees . . . ."

After the insured retained the public adjuster, the public adjuster contacted the insurer about the claim, attended the property inspection,

and sent follow-up correspondence about the inspection to the insurer. Ultimately, the insurer sent payment for its valuation of the loss and demanded appraisal to resolve any remaining dispute about the valuation. The appraisal clause in the insurance policy controls the process and states in part:

> ***Each party will select a qualified, disinterested appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand***.  Each party shall be responsible for the compensation of their selected appraiser.  The two appraisers shall then select a qualified, disinterested umpire.  If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the residence premises is located to select an umpire.  Reasonable expenses of the appraisal and the reasonable compensation of the umpire shall be paid equally by you and us.

(emphasis added).

After the demand for appraisal, the public adjuster sent a letter to the insurer naming himself the insured's appraiser.  The insurer objected to the public adjuster's appointment of himself, arguing that the appointment of the public adjuster violated the policy's requirement that the parties select a "qualified, disinterested appraiser."  The insured disagreed and filed an action for declaratory relief in the circuit court.

After a hearing, the circuit court entered summary judgment in the insured's favor, finding "as a matter of law that [the insured's] public adjuster can be his 'disinterested' appraiser."  That conclusion was generally based on two opinions from the Third District with now-questionable futures—*Rios v. Tri-State Insurance Co.*, 714 So. 2d 547 (Fla. 3d DCA 1998), and *Galvis v. Allstate Insurance Co.*, 721 So. 2d 421 (Fla. 3d DCA 1998).  *See State Farm Fla. Ins. Co. v. Sanders*, 44 Fla. L. Weekly D1901 (Fla. 3d DCA July 24, 2019) (finding the insured's public adjuster could not act as a disinterested appraiser under the insurance policy where the public adjuster, by separate contract, would receive 10% of any insurance recovery).[1]

The insurer asks that we conclude, as a matter of law, that an insured's public adjuster cannot later be appointed the insured's disinterested appraiser where there is a contingency-fee arrangement.  But we can

---

[1] A motion for rehearing en banc remains pending in *Sanders*.

resolve this issue on narrower grounds: the actions of the insured's appraiser combined with his financial interest.

Here, the insured signed a contract with the public adjuster entitling the public adjuster to a portion of any recovery from the insurer and assigning a portion of the claim to the public adjuster. Next, the public adjuster inspected the property and submitted the claim to the insurance company. Later, the public adjuster sent a letter appointing himself the appraiser.

On the facts of this case, we easily conclude the public adjuster was not "disinterested" and reverse the circuit court's judgment. On remand, the circuit court should enter judgment for the insurer on the issue of this specific public adjuster's ability to serve as the disinterested appraiser for this insured.

*Reversed and remanded.*

CONNER, KLINGENSMITH and KUNTZ, JJ., concur.
KUNTZ, J., concurs specially with opinion.
CONNER, J., concurs specially with opinion.

KUNTZ, J., concurring specially.

I join the Court's opinion in full. But I would also directly address the broader—and simple—question the insurer raises: Is a person disinterested in an insurance claim if the person is entitled to a percentage of the recovery from the same insurance claim? The answer, like the question, is simple: No. This conclusion is supported by the policy's plain language as well as case law assessing an appraiser's disinterest.

## I.    *Appraisal*

Appraisal is a contractual process controlled by the terms of an insurance policy. *Fla. Ins. Guar. Ass'n v. Branco*, 148 So. 3d 488, 491 (Fla. 5th DCA 2014) (citation omitted); *see also Allstate Ins. Co. v. Suarez*, 833 So. 2d 762, 766 (Fla. 2002).

Typically, those terms are in the insurance policy's appraisal clause. "Appraisal clauses are preferred, as they provide a mechanism for prompt resolution of claims and discourage the filing of needless lawsuits." *Fla. Ins. Guar. Ass'n v. Olympus Ass'n*, 34 So. 3d 791, 794 (Fla. 4th DCA 2010) (citation omitted). The appraisal process determines "the amount of a loss" but leaves questions of coverage for the court. *State Farm Fire & Cas. Co.*

*v. Licea*, 685 So. 2d 1285, 1287-88 (Fla. 1996); *see also Olympus Ass'n*, 34 So. 3d at 796.

## II. *Disinterested Appraisers*

### i. *Disinterested Defined*

The insurance policy in this case requires the appointment of a qualified and disinterested appraiser. But the word disinterested is not defined in the policy. When a word in an insurance policy is not defined, "the first step towards discerning the plain meaning of the [word] is to 'consult references [that are] commonly relied upon to supply the accepted meaning of [the] word[].'" *Penzer v. Transp. Ins. Co.*, 29 So. 3d 1000, 1005 (Fla. 2010) (second and third alterations in original) (quoting *Garcia v. Fed. Ins. Co.*, 969 So. 2d 288, 292 (Fla. 2007)).

"Indeed, in construing terms appearing in insurance policies, Florida courts commonly adopt the plain meaning of words contained in legal and non-legal dictionaries." *Barcelona Hotel, LLC v. Nova Cas. Co.*, 57 So. 3d 228, 231 (Fla. 3d DCA 2011) (internal quotation marks and citation omitted); *see also Gov't Emps. Ins. Co. v. Macedo*, 228 So. 3d 1111, 1113 (Fla. 2017).

Turning to legal and non-legal dictionaries, the term disinterested is defined as "not having the mind or feelings engaged," "no longer interested," and "free from selfish motive or interest." *Disinterested*, *Merriam-Webster's Collegiate Dictionary* 358 (11th ed. 2003). The American Heritage Dictionary of the English Language defines disinterested as "[f]ree of bias and self-interest; impartial," and, in a usage note, elaborates that "[t]raditionally, disinterested can only mean 'having no stake in an outcome[.]' . . ." *Disinterested*, *The American Heritage Dictionary of the English Language* 518 (5th ed. 2016) (emphasis removed).

Similarly, Garner's Modern English Usage explains that "[a] disinterested observer is not merely 'impartial' but has nothing to gain from taking a stand on the issue in question." Bryan A. Garner, *Garner's Modern English Usage* 290 (4th ed. 2016). That matches the meaning in legal dictionaries, which define disinterested as "not having a pecuniary interest in the matter at hand." *Disinterested*, *Black's Law Dictionary* (11th ed. 2019).

These sources are clear that the plain and ordinary meaning of disinterested includes free of self-interest or pecuniary interest. When an

appraiser has a direct financial interest in the outcome of the appraisal, the appraiser is not disinterested.

### ii. *Caselaw Analyzing the Disinterested Appraiser*

In addition to the policy's plain meaning, opinions analyzing the ability of a person to serve as a disinterested appraiser support my conclusion that a person entitled to a percentage of any recovery is not disinterested.

Although "appraisers do not violate their commitment [to the process] by acting as advocates for their respective selecting parties," appraisers "should be in a position to act fairly and be free from suspicion or unknown interest." *Cent. Life Ins. Co. v. Aetna Cas. & Sur. Co.*, 466 N.W.2d 257, 261 (Iowa 1991). In *Central Life Insurance Co.*, the Iowa Supreme Court held that "[d]ue to the contingent fee arrangement, Central's appraiser was interested because he had a direct financial interest in the dispute." *Id.*

In reaching a contrary conclusion, the circuit court in this case cited two decisions from the Third District: *Rios v. Tri-State Insurance Co.*, 714 So. 2d 547 (Fla. 3d DCA 1998), and a one-paragraph decision, *Galvis v. Allstate Insurance Co.*, 721 So. 2d 421 (Fla. 3d DCA 1998). In *Rios*, the insurance policy required the selection of a "competent, independent appraiser." 714 So. 2d at 548 (emphasis removed). The threshold question before the court was "how to interpret the term 'independent appraiser' as used in the insurance policy." *Id.* at 549. Turning to the dictionary definition of "independent," the court concluded that "independent appraiser" meant "that a party cannot appoint himself, herself, or itself, . . . nor can a party appoint the party's employee." *Id.* (internal citation omitted).

There, like in this case, the insurer asked the court to conclude that an appraiser "whose pay is based, in whole or in part, on a contingent fee percentage of the award" cannot be independent. *Id.* The Third District declined to do so, relying on the then-current version of the Code of Ethics for Arbitrators in Commercial Disputes, "promulgated jointly" by the American Arbitration Association and American Bar Association. *Id.* at 550. The court concluded the Code of Ethics required disclosure of an interest in the outcome and held that an appraiser was not impartial if the interest was properly disclosed. *Id.*

In *Galvis*, the Third District cited *Rios* and concluded an appraiser is not disinterested simply because of a contingency-fee agreement. 721 So. 2d at 421. That decision provided little analysis and failed to explain why a change in the wording of the policy to require a "competent and

disinterested appraiser" was irrelevant to the conclusion. But in a later case, Judge Cope, the author of the *Rios* opinion, stated that if an insurer wants neutral appraisers, the insurer should amend the policy language. *Citizens Prop. Ins. Corp. v. M.A. & F.H. Props., Ltd.*, 948 So. 2d 1017, 1021 (Fla. 3d DCA 2007) (Cope, C.J., concurring). Judge Cope was correct, and it seems amending the policy language is what the insurer did here. The policy language should resolve this issue and, in this case, the policy requires a disinterested appraiser.

Regardless, "*Rios* was largely premised on the then-existing version" of the arbitrators' Code of Ethics. *Shores at Coco Plum Condo. Ass'n v. Westchester Surplus Lines Ins. Co.*, No. 18-23910-Civ-COOKE/GOODMAN, 2019 WL 2223172, at *2 (S.D. Fla. Apr. 29, 2019) (citing *Branco*, 148 So. 3d at 495). Since *Rios*, the Florida Supreme Court has held that appraisal is not arbitration and that "the formal procedures of the Arbitration Code" do not govern an appraisal. *Suarez*, 833 So. 2d at 766.

I believe the *Rios* and *Galvis* decisions are distinguishable based on their reliance on the arbitration code. If they are not distinguishable, I believe they were incorrectly decided.

So too might the Third District, based on in its decision in *State Farm Florida Insurance Co. v. Sanders*, 44 Fla. L. Weekly D1901 (Fla. 3d DCA July 24, 2019). There, the insurer petitioned to quash a circuit court order allowing the insureds' public adjuster to serve as their disinterested appraiser. *Id*. The public adjuster was also the insureds' agent under a contract allowing "the agent and representative, under the insurance contract by State Farm Insurance . . . to adjust, appraise, advise, and assist in the settlement of the loss." *Id*.

For at least three reasons, the Third District found the public adjuster was interested. *Id*. (citing *Branco*, 148 So. 3d at 491). First, the court relied on the contract between the insureds and the public adjuster. *Id*. Second, the court noted that Florida law regulates public adjusters, *see* § 626.854, Fla. Stat. (2018), and requires public adjusters to "put the honest treatment of the claimant above the adjuster's own interests in every instance," *Sanders*, 44 Fla. L. Weekly D1901 (quoting Fla. Admin. Code R. 69B-220-201(3) (2015)). Third, the court determined that the public adjuster's contingency fee disqualified him. *Id*.

The *Sanders* court also relied, in large part, on the Fifth District's decision in *Branco*. In *Branco*, the insured suffered sinkhole damages and reported a claim to the insurer. 148 So. 3d at 490. Once the Florida

Insurance Guaranty Association assumed responsibility for the claim, it acknowledged coverage, and the insureds demanded appraisal. *Id.* That appraisal clause required each party to select a "competent and disinterested appraiser." *Id.* at 491 (emphasis removed). Despite the policy language, the insureds chose their attorney to serve as their disinterested appraiser. *Id.* at 494.

The Fifth District concluded the insureds' attorney could not serve as their disinterested appraiser. *Id.* at 496. The court distinguished *Rios* on the basis that it "was in large part premised on, and extensively quoted from, the then-existing version of the Code of Ethics for Arbitrators in Commercial Disputes . . . ." *Id.* at 495 (citing *Rios*, 714 So. 2d at 550). But the *Branco* court noted:

> That version of the Code of Ethics did not explicitly address the neutrality of arbitrators, but simply required disclosure of any direct or indirect financial interest in the outcome of the proceeding. However, the revised Code of Ethics adopted by AAA and ABA, effective since March 1, 2004, changes the landscape considerably, thus, undercutting the continued viability of the holding in *Rios*.

*Id.* The court held that "[t]he policy provision, which requires a 'disinterested appraiser,' expresses the parties' clear intention to restrict appraisers to people who are, in fact, disinterested." *Id.* at 496. Based on the duty of loyalty an attorney owes to her client, that attorney cannot serve as a disinterested appraiser. *Id.* (footnote and citations omitted).

I agree with the portions of the opinions in *Branco* and *Sanders* discussed above. It is simple: A person with a direct financial interest in the outcome is not disinterested.

We need not limit our review to those few Florida state court decisions. The policy at issue in *Verneus v. Axis Surplus Insurance Co.* required the selection of a competent appraiser, but when the court ordered appraisal, it required the selection of a competent and impartial appraiser. No. 16-21863-CIV-MARTINEZ/GOODMAN, 2018 WL 3417905, at *2,*4,*5 (S.D. Fla. July 13, 2018). The insurance company challenged the insured's selected appraiser because the appraiser had acted as an adjuster for the insured and even submitted the claim. *Id.* at *6. In addition, the appraiser owned the adjusting firm, and there was an extensive history between the appraiser and the insured's counsel. *Id.* at *7. Based on these and other factors, the court concluded the appraiser was not impartial. *Id.*

7

In another case, the court reached the same conclusion when applying a policy that required the appointment of a competent and impartial appraiser. *See Shores at Coco Plum*, 2019 WL 2223172, at *2. The court held that "[i]t is well-settled that an appraiser with a financial interest in the outcome of an appraisal is not impartial":

> Simply put, Mr. Downs is not an impartial appraiser. Here, Coco Plum admits that it intends that Mr. Downs be compensated on a contingency fee basis. Further, Coco Plum does not dispute that Mr. Downs has already prepared an estimate of the Property. By virtue of the contingency compensation plan, Mr. Downs has a vested interest in appraising the Property at the highest possible recovery because his compensation will be a percentage of the appraisal.

*Id.* at *2 (citations omitted).

Similarly, in *Landmark American Insurance Co. v. H. Anton Richardt, DDS, PA*, the court explained that a "pecuniary interest in the outcome is by definition a personal interest that favors one side over the other." No. 2:18-cv-600-FtM-29UAM, 2019 WL 2462865, at *3 (M.D. Fla. June 13, 2019). As a result, the court held that a person with a contingency fee agreement could not serve as the impartial appraiser. *Id.*

The court in *Harris v. American Modern Homes Insurance Co.* explained that "an appraiser becomes interested or biased by having a direct or indirect financial interest in the outcome of the appraisal." 571 F. Supp. 2d 1066, 1078 (E.D. Mo. 2008) (citation omitted). That court held "appraisers are not required to be entirely impartial." *Id.* (citation omitted). But "[w]hile an appraiser may receive a flat or hourly fee, he may not receive a contingent fee; the appraiser's fee may not be based on a percentage of the settled loss." *Id.* (citations omitted). In *Harris*, the appraiser's fee was $300 plus 15% of the final appraised value. *Id.* at 1079. The court held that the contingent fee gave the appraiser "a direct financial interest in the ultimate appraisal award, a fee that would increase as the appraisal amount increased." *Id.* The appraiser's contingent fee rendered him interested and ineligible to serve as a disinterested appraiser. *Id.*

I recognize that there is some disagreement on this issue beyond the language found in *Rios*. But, as in *Rios*, much of the disagreement turns on the specific contractual language in the policy or on facts that are not like those in this case. *See, e.g., Hatter v. Guardian Ins. Co.*, No. 1:18-cv-

00041, 2019 WL 1509995, at *2-3 (D.V.I. Apr. 5, 2019); *Prien Props., LLC v. Allstate Ins. Co.*, No. 07 CV 845, 2008 WL 1733591, at *3, *4 (W.D. La. Apr. 14, 2008); *Dawes v. Cont'l Ins. Co. of City of N.Y.*, 1 F. Supp. 603, 605 (E.D. La. 1932); *Hozlock v. Donegal Cos./Donegal Mut. Ins. Co.*, 745 A.2d 1261, 1265 (Pa. Super. Ct. 2000).

With minimal exception, these cases discuss a prior relationship between the parties. That, in my opinion, differs from a person with a direct financial interest in the insurance recovery. I find the authority concluding that a party with a financial interest cannot be disinterested to be more persuasive. When a person receives more money based on the amount of the award, the person has a direct interest in the outcome. While that person might be a competent appraiser, he is not a disinterested appraiser.

### III.    Conclusion

I would hold that a person with a direct financial interest in the amount recovered from an insurance claim cannot be disinterested. But, because the panel's opinion reaches the same result, and on grounds that I also agree with, I join the panel's opinion reversing the circuit court's judgment.

CONNER, J., concurring specially.

I agree with much of the analysis presented by Judge Kuntz's special concurrence. But I am not so sure the question of whether a contingency fee makes an appraiser "interested," instead of "disinterested," is as simple as Judge Kuntz suggests.

For me, there are two factors which establish the insured's public adjuster in this case was not "disinterested." First, the partial assignment of the claim puts the public adjuster to some extent in the shoes of the insured, and for me there is no doubt that a party to the claim is not "disinterested." Thus, it is significant that the public adjuster picked himself to be one of the appraisers to resolve the claim. Second, the fact that the compensation paid to the public adjuster for his work is keyed to a percentage of the recovery by the insured leads me to conclude the public adjuster is not "disinterested," because his fee arrangement arguably gives him a financial incentive to be less objective.

But the interplay between financial interest in the claim and the status of being "disinterested" is a bit complicated. One of the problems in this case is that on appeal, the insured raised policy arguments about the contingency fee arrangement that were not addressed in the summary

9

judgment. More specifically, the insured argued, particularly at oral argument, that if this Court takes a categorical position and declares that a contingency fee arrangement with an appraiser disqualifies the appraiser for not being "disinterested," insureds will have a difficult time hiring appraisers. In addition to the trial court not addressing the argument, there was no summary judgment evidence to support the argument. For that reason, I am hesitant to take a categorical position on the issue of a contingency fee being a disqualifier. To me, it is better to wait for another case to decide that issue where the record is better developed.

Additionally, I struggle with the notion that a contingency fee arrangement categorically makes one more financially interested in the outcome of the case than a flat fee arrangement. Just as it is frequently the case in personal injury cases that experts are hired more often by one side or the other, I suspect the same is true with appraisers for property insurance claims. Is an appraiser that seeks to be hired regularly by one side more objective than the appraiser who is hired on a contingency fee arrangement?

In addition to the two factors discussed above which persuade me to conclude that the public adjuster in this case was not "disinterested," there is an additional reason for my conclusion. The insurance policy provides that the appraisal process can be invoked only *after* there is a disagreement between the parties on the amount to be paid for the loss. That would typically mean that someone on each side has evaluated and determined an estimated value for the loss, after reviewing the premises and determining what needs to be replaced or repaired. Under the appraisal process, the timing of the sequence of events leads me to conclude that the intent of the parties, in agreeing that "disinterested" appraisers are to be selected, was for the selected appraisers to provide a fresh set of eyes or new perspective to evaluate the value of the claim. Aside from the fact that the public adjuster in this case picked himself to be an appraiser, it is clear from the record that the public adjuster would not have provided a fresh set of eyes or new perspective to the valuation process.

For the reasons expressed above, I agree the public appraiser in this case could not properly serve as a "disinterested" appraiser and concur with the majority opinion.

*        *        *

***Not final until disposition of timely filed motion for rehearing.***