ORFINGER, J.
Florida Insurance Guaranty Association (“FIGA”)[1] appeals an order compelling appraisal of a sinkhole loss under a homeowner’s insurance policy issued to Manuel and Irma Branco. FIGA contends that the trial court erred in ordering appraisal because: (1) the policy provides for appraisal only if the amount of loss was disputed and, here, only the method of repair is disputed; (2) the Brancos waived their right to demand appraisal; and (3) the order implicitly approves the Brancos’ selection of a partner in the law firm representing them as their appraiser, contrary to the policy’s requirement to select “disinterested” appraisers. We agree that the trial court erred in allowing the Bran-cos to select an appraiser who was not “disinterested.” We reject FIGA’s other arguments.
The Brancos’ home sustained suspected sinkhole damage in April 2010. They reported the loss to their homeowner’s insurer, HomeWise Preferred Insurance Company (“HomeWise”), several days later. In response, HomeWise retained an engineering firm to perform a limited structural assessment. Following receipt of the engineer’s report, HomeWise denied the Brancos’ claim, concluding that a “sinkhole loss,” as defined in the policy, had not occurred. Several months later, the Bran-cos sued HomeWise, alleging breach of contract. HomeWise filed its answer and defenses in May 2011, denying that it had breached the insurance contract because the Brancos’ property had not sustained a covered loss.
In November 2011, HomeWise was declared insolvent and FIGA stepped in to deal with the “covered claims” within the scope of its enabling statutes. As a result, the Brancos’ case was automatically stayed.[2] In August 2012, after the stay expired, the Brancos filed an amended complaint, substituting FIGA as the named defendant due to HomeWise’s insolvency.[3] FIGA then asked the court for an additional stay to allow further investigation of the claim. The court extended the stay, and FIGA completed its additional testing in early March 2013. On April 8, 2013, FIGA answered the Brancos’ amended complaint, admitting, for the first time, “that sinkhole activity was identified as a contributing cause of damage to the [Bran- *491 cos’] property,” and that the Brancos “are entitled to the amount payable for the actual repair of the loss/actual repairs to the property, not to exceed policy limits
[[Image here]]
The Brancos demanded appraisal in a letter to FIGA on April 30, 2013. On May 23, 2013, the Brancos moved the court to compel appraisal. The Brancos’ appraisal request was based on a provision in the insurance policy that provided, in relevant part:
6. If you and we fail to agree on the amount of loss either may
[[Image here]]
b. Demand an appraisal of the loss. In this event each party will choose a competent and disinterested appraiser within twenty (20) days after the receipt of a written request from the other
(1) The two appraisers will choose a competent and independent umpire
[[Image here]]
(2) The appraisers will separately set the amount of the loss and assign the amount of loss attributable to each specific policy coverage
(3) If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of the loss
(4) If they fail to agree, they will submit their difference to the umpire
(5) A decision by any two must assign the amount of loss attributable to each specific policy coverage
(Emphasis added).
On June 24, 2013, FIGA again asked the trial court for an additional stay to allow for neutral evaluation of the Brancos’ claims and, simultaneously opposed the Brancos’ motion to compel appraisal. The trial court granted FIGA’s request for an additional stay and further ordered that “[t]he parties are to first attempt to resolve the underlying claims in the lawsuit through neutral evaluation, and barring resolution, the parties are to then take the matter through appraisal.” FIGA appeals this order to the extent that it requires appraisal.[4]
FIGA first argues that the trial court erred in ordering the parties to appraisal because their dispute with the Brancos is over the “method of repair” rather than the “amount of loss.” Interpretation of insurance policies is reviewed de novo, e.g., State Farm Florida Insurance Co. v. Phillips, 134 So.3d 505, 507 (Fla. 5th DCA 2014), as are orders compelling appraisal, e.g., Citizens Property Insurance Corp. v. Demetrescu, 137 So.3d 500, 502 (Fla. 4th DCA 2014).
Appraisals are creatures of contract and the subject or scope of appraisal depends on the contract provisions. Citizens Prop, Ins. Corp. v. Casar, 104 So.3d 384, 385-86 (Fla. 3d DCA 2013). Absent ambiguity, the plain meaning of an insurance policy controls. E.g., Arias v. Affirmative Ins. Co., 944 So.2d 1195, 1197 (Fla. 4th DCA 2006) (quoting Se. Fire Ins. Co. v. Lehrman, 443 So.2d 408, 408-09 (Fla. 4th DCA 1984)). Courts should resort to rules of interpretation only when the policy language is ambiguous or otherwise susceptible to multiple meanings. E.g., Phillips, 134 So.3d at 507 (citing Arias, 944 So.2d at 1197).
When the disagreement concerns the amount of loss, not coverage, it is for the appraisers to arrive at the amount to be paid. Johnson v. Nationwide Mut. Ins. Co., 828 So.2d 1021, 1025 (Fla.2002). The issue in this case is whether the method or extent of necessary repairs is within the *492 scope of an “amount of loss” appraisal policy provision. At least one court, considering this question, answered affirmatively, reasoning:
Estimating the dollar value of a loss presupposes a judgment of what repairs are necessary to recoup from the loss. Appraisers could not perform their duties if they were prohibited from opining on these matters. And in practice, where there have been two different assessments of the amount of loss — one by Plaintiffs’ assessor, one by Defendant’s — it is not surprising that the assessors may have some disagreement as to whether the covered occurrence actually caused a certain portion of the putative damage, as well as disagreements about the scope and method of necessary repairs. But to say such disputes are sufficient to negate the appraisal provision in the policy would effectively eliminate appraisal as a workable method of alternative dispute resolution.
Williamson v. Chubb Indem. Ins. Co., No. ll-cv-6476, 2012 WL 760838, at *4 (E.D.Pa. Mar. 8, 2012); see also UrbCam-Com/WSU I, LLC v. Lexington Ins. Co., No. 12-CV-15686, 2014 WL 1652201, at *6 (E.D.Mich. Apr. 23, 2014) (approvingly citing Williamson, and holding that dispute regarding necessary repairs, and length of time, to reopen building goes to “amount of loss,” which falls squarely within ambit of appraisal); Correnti v. Merchs. Preferred Ins. Co., Civ. No. 12-6303, 2013 WL 373273, at *2 (E.D.Pa. Jan. 31, 2013) (determining that as dispute was over “extent of damage,” it was dispute regarding “amount of loss,” and, thereby, required appraisal); Sydney v. Pac. Indem. Co., Civil Action No. 12-1897, 2012 WL 3135529, at *3 (E.D.Pa. Aug. 1, 2012) (“A disagreement as to the scope of the repairs and replacements needed to remedy a loss is still within the purview of the appraisal clause.”).
We agree with the analysis in Williamson and believe that FIGA’s interpretation of the appraisal clause in the policy would render the appraisal process meaningless. Although FIGA may characterize the dispute over the necessary repairs as a coverage issue, in reality, it is an “amount of loss” issue. There is no dispute that HomeWise insured the Brancos’ home at the relevant time for sinkhole losses, and FIGA has now admitted that the Brancos have sustained a covered loss. The logical disagreement between an insured and the insurer after a covered loss would be, as the court in Williamson stated, “disagreement as to whether the covered occurrence actually caused a certain portion of the putative damage, as well as disagreements about the scope and method of necessary repairs.” 2012 WL 760838, at *4. The extent and cost of the necessary repairs to the Brancos’ property will determine, in large part, the amount FIGA owes. To accomplish their task, the appraisers will have to consider the necessary method and scope of required repairs to evaluate the amount of the Brancos’ loss.[5] Williamson, 2012 WL 760838 at *4; see Currie v. State Farm Fire & Cas. Co., Civil Action No. *493 13-6713, 2014 WL 4081051, at *5 (E.D.Pa. Aug. 19, 2014). For these reasons, we reject FIGA’s contention that the appraisers cannot determine the method or scope of the necessary repairs when determining the amount of the loss.[6]
FIGA also argues that the Brancos waived their right to appraisal by initiating and participating in litigation. In this regard, appraisal clauses are viewed similarly to arbitration clauses. Thus, we review the trial court’s findings of fact for competent, substantial evidence, and its conclusions of law de novo. Fla. Ins. Guar. Ass’n v. Castilla, 18 So.3d 703, 704 (Fla. 4th DCA 2009); Doctors Assocs. v. Thomas, 898 So.2d 159,162 (Fla. 4th DCA 2005) (reiterating that question of waiver is one of fact, reviewable for competent, substantial evidence, and all questions about waivers of arbitration should be construed in favor of arbitration, rather than against it). Here, while the trial court made no findings of fact on the issue of waiver, the facts are not in dispute. Therefore, we review the waiver issue de novo. See Truly Nolen of Am., Inc. v. King Cole Condo. Ass’n, 143 So.3d 1015, 1017 (Fla. 3d DCA 2014).
In the context of arbitration, a waiver of the right to arbitrate occurs when a party actively participates in a lawsuit or engages in conduct inconsistent with the right to arbitrate. Raymond James Fin. Servs., Inc. v. Saldukas, 896 So.2d 707, 711 (Fla.2005). Active partic-, ipation in a lawsuit is considered a waiver because it is generally presumed to be inconsistent with the right to arbitrate. Thomas, 898 So.2d at 162; see, e.g., Morrell v. Wayne Frier Manufactured Home Ctr., 834 So.2d 395, 395-98 (Fla. 5th DCA 2003) (finding waiver where party litigated for eleven months with various motions and pleadings); ARI Mut. Ins. Co. v. Hogen, 734 So.2d 574, 576 (Fla. 3d DCA 1999) (finding waiver when party engaged in “aggressive” litigation for nine months with pleadings, interrogatories, requests for productions, sought hearings, and contested other party’s motions and pleadings); Owens & Minor Med., Inc. v. Innovative Mktg. & Distribution Servs., Inc., 711 So.2d 176, 176 (Fla. 4th DCA 1998) (finding waiver when party litigated for thirteen months, secured prejudgment writ of garnishment, made multiple requests for admissions, filed pleadings and motions, and contested other party’s pleadings and motions); Gray Mart, Inc. v. Fireman’s Fund Ins. Co., 703 So.2d 1170, 1171-73 (Fla. 3d DCA 1997) (finding waiver following fourteen months of litigation and demand for appraisal one month before trial).
As FIGA notes, the Brancos litigated their case for more than two years with multiple pleadings and discovery requests. However, the question of waiver of appraisal is not solely about the length of time the case is pending or the number of filings the appraisal-seeking party made. Instead, the primary focus is whether the Brancos acted inconsistently with their appraisal rights. Saldukas, 896 So.2d at 711; see Am. Capital Assur. Corp. v. Courtney Meadows Apartment, L.L.P., 36 So.3d 704, 707 (Fla. 1st DCA 2010) (finding party did not waive right to appraisal as party had not acted inconsistently with right from time of demand).
*494 Unlike arbitration, “[a]ppraisal exists for a limited purpose-the determination of ‘the amount of the loss.’ ” Citizens Prop. Ins. Corp. v. Mango Hill 6 Condo. Ass’n, 117 So.3d 1226, 1230 (Fla. 3d DCA 2013). Until the insurer has a reasonable opportunity to investigate and adjust the claim, there is no “disagreement” (for purposes of appraisal) regarding the value of the property or the amount of loss to be appraised. Citizens Prop. Ins. Corp. v. Galeria Villas Condo. Ass’n, 48 So.3d 188, 191 (Fla. 3d DCA 2010) (reversing prematurely-ordered appraisal). An insurer that denies coverage does not need to seek appraisal before litigation because “[i]t would make no sense to say that [the insurer] was required to request ... appraisal on a loss it had already refused to pay.” Gonzalez v. State Farm Fire & Cas. Co., 805 So.2d 814, 817 (Fla. 3d DCA 2000); see Chimerakis v. Sentry Ins. Mut. Co., 804 So.2d 476, 480 (Fla. 3d DCA 2001) (holding “an action to compel appraisal does not accrue until the policy conditions precedent have been performed or waived, and appraisal is then refused”). Absent contract language to the contrary, we see no reason why the insured should not have the same flexibility in cases when coverage is denied. But see Cypress Pointe at Lake Orlando Condo. Ass’n v. Mt. Hawley Ins. Co., No. 6:10-cv-1459-Orl-36TBS, 2012 WL 6138993, at *2 (M.D.Fla. Nov. 19, 2012) (finding insured acted inconsistently with appraisal right by pursuing litigation for two years, though insurer consistently denied coverage).
Because coverage for the Brancos’ loss was initially denied, appraisal would not have been appropriate until April 2013 at the earliest, when FIGA conceded that a covered loss had occurred. After FIGA admitted coverage and the trial court lifted the stay, the Brancos filed one request for admissions and demanded appraisal three weeks later. Because the Brancos demanded appraisal shortly after FIGA conceded coverage, and propounded only a single request for admissions before seeking appraisal, we view this case as closer to those finding no waiver. See, e.g., Courtney Meadows, 36 So.3d at 707 (indicating appraisal demand was timely as policy did not contain any language to invoke appraisal within set time from receiving or waiving sworn proof of loss); Castilla, 18 So.3d at 703-05 (explaining appraisal clause may be invoked for first time after litigation has commenced and concluding that party did not act inconsistently with right to appraisal by participating in suit). Thus, we conclude, as did the trial court, that the Brancos did not waive their right to appraisal.[7]
Finally, FIGA argues that the trial court erred in ordering appraisal after the Bran-cos nominated one of their own attorneys, Alan S. Marshall, as an appraiser, violating the policy’s requirement of “disinterested” appraisers. The Brancos concede that their policy requires disinterested appraisers, and admit that Attorney Marshall is “a partner in the law firm representing them.” Further, Attorney Marshall actually represented the Brancos below, as his name appears on several documents filed on their behalf. Because these facts are undisputed and the interpretation of the insurance policy is a pure question of law, the trial court’s acceptance of Attorney Marshall as a “disinterested appraiser” is reviewed de novo. Truly Nolen, 143 So.3d at 1017; Demetrescu, 137 So.3d at 502; Phillips, 134 So.3d at 507; Castilla, 18 So.3d at 704.
*495 Parties to a contract are free to contract for the qualifications of the decision makers in their preferred form of alternative dispute resolution. Lee v. Marcus, 396 So.2d 208, 210 (Fla. 3d DCA 1981); see Citizens Prop. Ins. Corp. v. M.A & F.H. Props., Ltd., 948 So.2d 1017, 1020 (Fla. 3d DCA 2007). Our research has revealed no Florida case that has squarely addressed whether a party’s attorney may serve as a “disinterested appraiser.” [8] The Brancos rely on the third district’s holding in Rios v. Tri-State Insurance Co., 714 So.2d 547, 548-49 (Fla. 3d DCA 1998), which interpreted “independent appraiser” to allow the appointment of an appraiser whose compensation was calculated as a percentage of the eventual appraisal award. See also Galvis v. Allstate Ins. Co., 721 So.2d 421, 421 (Fla. 3d DCA 1998) (reaching same conclusion when policy required “disinterested appraiser”). Rios was in large part premised on, and extensively quoted from, the then-existing version of the Code of Ethics for Arbitrators in Commercial Disputes, promulgated jointly by the American Arbitration Association (“AAA”) and the American Bar Association (“ABA”). Rios, 714 So.2d at 550. That version of the Code of Ethics did not explicitly address the neutrality of arbitrators, but simply required disclosure of any direct or indirect financial interest in the outcome of the proceeding. However, the revised Code of Ethics adopted by AAA and ABA, effective since March 1, 2004, changes the landscape considerably, thus, undercutting the continued viability of the holding in Rios. The current Code of Ethics provides, in relevant part:
[I]t is preferable for all arbitrators including any party-appointed arbitrators to be neutral, that is, independent and impartial, and to comply with the same ethical standards. However, parties in certain domestic arbitrations in the United States may prefer that party-appointed arbitrators be non-neutral and governed by special ethical considerations. These special ethical considerations appear in Canon X of this Code.
This Code establishes a presumption of neutrality for all arbitrators, including party-appointed arbitrators, which applies unless the parties’ agreement, the arbitration rules agreed to by the parties or applicable laws provide otherwise.
American Arbitration Association, The Code of Ethics for Arbitrators in Commercial Disputes (Oct. 21, 2011), https://www. adr.org/aaa/faces/arbitratorsmediators/ aboutarbitratorsmediators/codeofethics (follow “Code of Ethics for Arbitrators in Commercial Disputes” hyperlink).
Unlike the Code of Ethics relied upon in Rios, the current Code of Ethics establishes a presumption of neutrality for all arbitrators, including party-appointed arbitrators. This fundamental change undermines the Rios holding, particularly when, as here, the contract requires the appointment of “disinterested” appraisers. If an appraiser owes his nominating party a “fiduciary duty of loyalty” or a “confidential relationship,” as do attorneys, then “[t]he existence of such a relationship between a litigant and an [appraiser] creates too great a likelihood that the [appraiser] will be incapable of rendering a fair judgment.” Donegal Ins. Co. v. Longo, 415 Pa.Super. 628, 610 A.2d 466, 468-69 (1992) (citing Bole v. Nationwide Ins. Co., 475 Pa. 187, 379 A.2d 1346, 1350 (1977) (Roberts, J., dissenting, but agreeing with majority that attorney in present employment of party cannot serve as arbitrator)); see Land v. *496 State Farm Mut. Ins. Co., 410 Pa.Super. 579, 600 A.2d 605, 607 (1991) (holding that “indirect connection” between party and arbitrator was not objectionable, unlike attorney-client relationship); see also The Florida Bar v. Padgett, 481 So.2d 919, 919 (Fla.1986) (explaining that attorneys owe a fiduciary duty to their clients). This conclusion makes common sense.
The policy provision, which requires a “disinterested appraiser,” expresses the parties’ clear intention to restrict appraisers to people who are, in fact, disinterested. Given the duty of loyalty owed by an attorney to a client, we conclude that attorneys may not serve as their clients’ arbitrators or appraisers when “disinterested” arbitrators or appraisers are bargained for.[9] See Tiger Fibers, LLC v. Aspen Specialty Ins. Co., 571 F.Supp.2d 712, 716 (E.D.Va.2008) (finding that under statute governing parties’ appointment of disinterested appraisers to assess insurance losses, disinterestedness of selected appraiser pertains to partiality of appraiser for or against specific parties to dispute); N. Assur. Co., Ltd., of London v. Melinsky, 237 Mich. 665, 213 N.W. 70, 71 (1927) (explaining that appraisers should be disinterested and not represent parties selecting them); Longo, 610 A.2d at 469 (determining that arbitrator’s legal representation of party, even though in matter unrelated to dispute in arbitration, gave rise to confidential relationship, which created likelihood that arbitrator would be incapable of rendering fair judgment); see also Allstate Ins. Co. v. Suarez, 833 So.2d 762, 765 (Fla.2002) folding that while appraisal may be less formal than arbitration, its proceedings should still be conducted in accordance with contract provisions); Lee, 396 So.2d at 210 (adopting principle that parties are free to bargain for “disinterested” appointees).
For these reasons, we reverse that part of the order allowing Attorney Marshall to serve as an appraiser. In all other respects, we affirm the order.
AFFIRMED in part; REVERSED in part; REMANDED.
WALLIS and LAMBERT, JJ., concur.

. “FIGA is a public, nonprofit corporation created by statute to provide a mechanism for payment of covered claims under certain classes of insurance policies issued by insurers which have become insolvent.” Fla. Ins. Guar. Ass'n v. Devon Neighborhood Ass'n, 67 So.3d 187, 189 (Fla.2011); see §§ 631.51, 631.55, Fla. Stat. (2011).

. See § 631.67, Fla. Stat. (2011) (requiring automatic six-month stay on activation of FIGA); see also Snyder v. Douglas, 647 So.2d 275, 279 (Fla. 2d DCA 1994) (holding extension beyond statutorily mandated six-month stay is subject to discretion of trial court).

.When an insurer becomes insolvent, "FIGA is deemed the ‘insurer' to the extent of covered claims and has the same obligations as the insolvent insurer,” except as limited by statute. Jones v. Fla. Ins. Guar. Ass’n, 908 So.2d 435, 454 (Fla.2005); see also § 631.57, Fla. Stat. (2010).

. We have jurisdiction. See Fla. R. App. P. 9.130(3)(C)(iv).

. In dicta, the Florida Supreme Court has observed that appraisal clauses "require an assessment of the amount of a loss. This necessarily includes determinations as to the cost of repair or replacement and whether or not the requirement for a repair or replacement was caused by a covered peril or a cause not covered ...State Farm Fire & Cas. Co. v. Licea, 685 So.2d 1285, 1288 (Fla.1996) (emphasis added): see also Gonzalez v. State Farm Fire & Cas. Co., 805 So.2d 814, 817 (Fla. 3d DCA 2000) (noting that under Licea where insurer admits there is covered loss, "the appraisers are to inspect the roof and arrive at a fair value for the [covered loss] damage, while excluding payment for the repairs required by [other causes]”).

. FIGA also expresses concern about the outcome of the case, including having to pay the insured directly, in contravention of section 631.54(3)(c); having to pay more than the "covered losses,” under a particular version of section 631.54; having to pay attorney’s fees for which it is not liable; and so on. However, these issues are not properly before this Court because the order under review does not require any payment.

. To the extent that this issue is normally resolved with an evidentiary hearing, neither party suggests that they ever requested a hearing below.

. That may be because the very idea of suggesting that one’s own attorney is disinterested seems so odd.

. "Disinterested" is defined as "[fjree from bias, prejudice, or partiality; not having a pecuniary interest $4Ca disinterested witness,” Black’s Law Dictionary 536 (9th ed. 2009), and "not having the mind or feelings engaged: not interested ... free from selfish motive or interest: unbiased,” Miriam-Webster’s Collegiate Dictionary 333 (10th ed. 2000). The latter also defines "disinterestedness” as "the quality of being objective or impartial.” Id..; see also Tiger Fibers, LLC v. Aspen Specialty Ins. Co., 571 F.Supp.2d 712, 716 (E.D.Va.2008) (defining "disinterested” as "lacking or revealing lack of interest,” "not influenced by regard to personal advantage,” "free from selfish motive," or "not biased or prejudiced”).