NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

FLORIDA INSURANCE GUARANTY )
ASSOCIATION, INC., )
)
        Appellant, )
)
v. )      Case No. 2D13-5750
)
FERNANDO MAYA and MILLIE MAYA, )
)
        Appellees. )
                           )

Opinion filed April 22, 2015.

Appeal pursuant to Fla. R. App. P.
9.130 from the Circuit Court for
Hillsborough County; Charles E. Bergmann,
Judge.

G. William Bissett, Jr. for Kubicki Draper,
P.A., Miami, for Appellant.

Nancy A. Lauten and George A. Vaka, of
Vaka Law Group, Tampa; and Kenneth C.
Thomas, Jr., of Marshall Thomas Burnett,
Land O'Lakes, for Appellees.


WALLACE, Judge.

        Florida Insurance Guaranty Association, Inc. (FIGA), appeals a nonfinal

order compelling appraisal concerning the repair of cosmetic damages caused by a

sinkhole to a residence owned by Fernando Maya and Millie Maya. Although we

conclude that the Mayas' activities in litigating their claim did not amount to a waiver of appraisal, we reverse the order and remand for further proceedings based on this court's recent decision in Florida Insurance Guaranty Ass'n v. de la Fuente, 40 Fla. L. Weekly D123 (Fla. 2d DCA Jan. 7, 2015).

## I. THE FACTUAL AND PROCEDURAL BACKGROUND

In 2008, the Mayas reported suspected sinkhole activity at their home in Tampa to their insurer, HomeWise Preferred Insurance Company. HomeWise initially denied the claim based on two reports from SDII Global Corporation (SDII), an engineering firm randomly selected by HomeWise from a list of approved contractors. SDII initially reported that there was no evidence of sinkhole activity at the Mayas' residence. In a second report, SDII said that there was indeed sinkhole activity but that this was not the cause of the damage to the Mayas' home. SDII determined that the damage was caused by normal settlement and the aging of materials used in construction. Ultimately, the Mayas filed an action for breach of the insurance contract against HomeWise. Shortly thereafter, on November 4, 2011, HomeWise went into receivership.

Before HomeWise failed, the Mayas had hired two firms that confirmed that sinkhole activity was the cause of the damage. One of these firms recommended underpinning to correct the structural damage to the home. A third firm documented above-ground damage resulting from the sinkhole activity that would also have to be repaired. (Repairs to above-ground damage caused by sinkhole activity are commonly referred to in the industry as "cosmetic repairs" and are handled separately from the sinkhole remediation and foundation repairs.) Also before HomeWise's demise, in

March, 2011, the Mayas had obtained a repair estimate from Champion Foundation Repair Systems for the remediation and stabilization of the home's foundation. Champion's estimate was for $145,300 to $169,300. The Mayas also obtained an estimate for the cosmetic repairs from a contractor named Triad, which estimated the cost of the cosmetic repairs at about $80,000.

After FIGA was appointed as receiver for HomeWise, the Mayas forwarded the Champion contract to FIGA and demanded payment. FIGA wrote to the Mayas' counsel and explained that before it could do anything, the Mayas must "submit for consideration the cost of the stabilization repairs once you enter into a contract to complete the repairs according to the specifications in the engineering report from SDII global that is being provided to you. A reasonable advance payment will be provided to your contractor before the work is performed." The letter also informed counsel that the Mayas could submit another claim for additional damages discovered after the stabilization repairs were completed. Finally, the letter informed counsel that any contractor doing the work would be required to coordinate with SDII, which would monitor the process and provide certification that the work was completed according to the specifications contained in SDII's report.

Once again, the Mayas demanded payment. Next, they filed an amended complaint naming FIGA as a defendant. FIGA filed an answer and affirmative defenses. After some discovery occurred, the Mayas relented and told FIGA that they would proceed with the remediation and foundation repairs in accordance with the procedure that FIGA had outlined.

However, on February 8, 2013, before the remediation and foundation repairs were complete, the Mayas' attorney made a demand by letter on FIGA for a check payable to the Mayas for the estimated cost of cosmetic repairs. The Mayas threatened FIGA with further legal action if it did not tender a check directly to them, within ten days of the letter, for the cost of "cosmetic damages." The letter informed FIGA that the Mayas intended to act as their own contractor. FIGA responded, noting that because the remediation and stabilization repairs had not yet been completed, addressing the issue of the cosmetic repairs was premature. In a second letter, FIGA provided the Mayas with a post-stabilization cosmetic repair estimate prepared by Neumann Construction. Once again, FIGA told the Mayas that it would pay whatever contractor the Mayas hired to perform the cosmetic repairs.

On May 13, 2013, the Mayas responded by demanding appraisal under the terms of the insurance policy. The Mayas filed their motion to compel appraisal three months later on August 5, 2013. Relying on the 2011 amendment to the definition of "covered claim" contained in section 631.54 (3), Florida Statutes, FIGA argued that appraisal was inappropriate because, among other things, the effect of the amendment was to prohibit any direct payment to the Mayas for their sinkhole loss. In considering the Mayas' motion to compel appraisal, the trial court ruled that even if FIGA was correct about its inability to write an advance check to the insureds, this circumstance would not prevent appraisal in accordance with the terms of the contract. FIGA also argued that the Mayas had waived their right to demand an appraisal by their litigation activities. Without addressing FIGA's waiver argument directly, the trial court entered

- 4 -

an order compelling appraisal.  In its written order, the trial court did not make any findings of fact or law.  This appeal followed.[1]

## II.  THE STANDARD OF REVIEW

With regard to an order compelling appraisal, we review the trial court's factual findings under a competent, substantial evidence standard.  Our review of the trial court's application of the law to the facts is de novo.  Where, as in this case, the trial court made no findings of fact or law with regard to the question of waiver, we apply the relevant law to the facts in the record.  See Fla. Ins. Guar. Ass'n v. Castilla, 18 So. 3d 703, 704 (Fla. 4th DCA 2009); see also Fla. Ins. Guar. Ass'n v. Branco, 148 So. 3d 488, 493 (Fla. 5th DCA 2014) ("Here, while the trial court made no findings of fact on the issue of waiver, the facts are not in dispute.  Therefore, we review the waiver issue de novo.").  Our review of the question of the applicability of the 2011 amendment to section 631.54(3) to the Mayas' rights under their policy is a question of statutory construction that we review de novo.  See W. Fla. Reg'l Med. Ctr., Inc. v. See, 79 So. 3d 1, 8 (Fla. 2012).

## III.  DISCUSSION

### A.  The Issue of Waiver

FIGA argues that the Mayas waived any entitlement to appraisal based upon their litigation activities.  We disagree.

"A waiver of the right to seek appraisal occurs when the party seeking appraisal actively participates in a lawsuit or engages in conduct inconsistent with the

---

[1]We have jurisdiction under Florida Rule of Appellate Procedure 9.130(a)(3)(C)(iv).

- 5 -

right to appraisal." Fla. Ins. Guar. Ass'n v. Rodriguez, 153 So. 3d 301, 303 (Fla. 5th DCA 2014) (citing Branco, 148 So. 3d at 493). "[T]he primary focus is whether [the insureds] acted inconsistently with their appraisal rights." Id. (quoting Branco, 148 So. 3d at 493).

In this case, FIGA argues that the Mayas unreasonably delayed the case for two years before asking for appraisal. However, up to the point the Mayas requested appraisal, the parties' dispute was about the extent of the work necessary to remediate the sinkhole and to stabilize the foundation of the home. This issue was resolved when the Mayas conceded the point and allowed the repairs to proceed in accordance with the process proposed by FIGA. The issue of "cosmetic repairs" did not arise until February 8, 2013, when the Mayas demanded direct payment for the amount of the estimate that they had received from Triad for those repairs. Thus the Mayas made their demand for the direct payment of the cosmetic repairs only four months before they requested appraisal under the policy. Under the circumstances shown here, we are unable to conclude that the trial court erred in rejecting FIGA's argument that the Mayas had waived their right to appraisal of the amount of the cosmetic repairs.

### B. The Impact of de la Fuente

Notwithstanding our finding that the Mayas did not waive their right to appraisal of the amount of the cosmetic repairs, we conclude that the trial court erred in entering the order compelling appraisal based on this court's recent decision in de la Fuente.[2] The provisions in the Mayas' policy are the same as the provisions under

---

[2]We recognize that the trial court did not have the benefit of de la Fuente at the time of the hearing on the Mayas' motion to compel appraisal.

review in de la Fuente.  Under the analysis in that case, the definition of "covered claim" in the 2011 amendment to section 631.54(3) is applicable, and appraisal is unavailable to determine the amount of the loss.  de la Fuente, 40 Fla. L. Weekly at D124-25; see also Fla. Ins. Guar. Ass'n v. Waters, 157 So. 3d 437, 439 (Fla. 2d DCA 2015); Fla. Ins. Guar. Ass'n v. Bernard, 140 So. 3d 1023, 1031 (Fla. 1st DCA 2014).

## IV.  CONCLUSION

For the foregoing reasons, we reverse the order compelling appraisal and remand for further proceedings.  As we did in de la Fuente, we certify the following questions to the Florida Supreme Court as questions of great public importance:

I.  DOES THE DEFINITION OF "COVERED CLAIM" IN SECTION 631.54(3), FLORIDA STATUTES, EFFECTIVE May 17, 2011, APPLY TO A SINKHOLE LOSS UNDER A HOMEOWNERS' POLICY THAT WAS ISSUED BY AN INSURER BEFORE THE EFFECTIVE DATE OF THE NEW DEFINITION WHEN THE INSURER WAS ADJUDICATED TO BE INSOLVENT AFTER THE EFFECTIVE DATE OF THE NEW DEFINITION?

II.  DOES THE STATUTORY PROVISION LIMITING FIGA'S MONETARY OBLIGATION TO THE AMOUNT OF ACTUAL REPAIRS FOR A SINKHOLE LOSS PRECLUDE AN INSURED FROM OBTAINING AN APPRAISAL AWARD DETERMINING THE "AMOUNT OF LOSS" IN ACCORDANCE WITH THE TERMS OF THE HOMEOWNERS' POLICY OF INSURANCE?

Reversed and remanded for further proceedings; questions certified.


DAVIS, CHARLES A., JR., SENIOR JUDGE, and RAIDEN, MICHAEL E., ASSOCIATE JUDGE, Concur.