ALTENBERND, Judge,
Concurring.
I concur in this opinion, including our decision that the Lustres waived appraisal. As to the alternative holding that FIGA does not need to engage in contractual appraisal of these sinkholes claims, I agree that the issue in this case is resolved by this court’s holding in de la Fuente. That said, I am not entirely convinced that the statutory provisions for the processing and payment of “covered claims” by FIGA, a nonprofit corporation created to provide a quasi-governmental safety net in the event of an insurance company’s insolvency, are so inconsistent with the rights of appraisal provided in the insurance contract that FIGA can avoid its duty to appraise the insurance claim under the contract. Thus, I am inclined to believe that on the second certified question in de la Fuente, 158 So.3d at 676-677, this court may have arrived at the wrong answer. By eliminating the duty to appraise sinkhole claims under the contract, we are apparently shifting, the resolution of disputed sinkhole claims to the courts for complex and possibly lengthy jury trials.
An insurance claim on an insurance policy and a “covered claim”.under chapter 631 are two distinctly different claims.. FIGA provides limited protection for the public from insurance company insolven- *631 cíes, as a matter of state law, in a manner somewhat similar to the protection provided by FDIC for bank insolvencies as a matter of federal law. These governmen-tally created entities help provide confidence in, and stability for, our economy in times of crisis. But FIGA is not a governmental insurance company that fully replaces the insolvent insurance company as the insurer on a policy. Instead, it provides a limited statutory guarantee payment, which may be based on an underlying insurance claim. .
A “covered claim” is defined in section 631.54(3). In general, a covered claim may be an insurance claim that is payable under the terms of the relevant contract or a claim for the repayment of unearned premiums. See id. In the case of sinkhole coverage, the statutory definition of a covered claim is modified by complex language stating that a covered claim does not include:
Any amount payable for a sinkhole loss other than testing deemed appropriate by the association or payable for the actual repair of the loss, except that the association may not pay for attorney’s fees or public adjuster’s fees in connection with a sinkhole loss or pay the policyholder. The association may pay for actual repairs to the property but is not liable for amounts in excess of policy limits.
§ 631.54(3)(c).
FIGA’s powers and duties do not require 'that it pay everything that falls within the definition of a covered claim. Generally, it is not required to pay the first $100 of a claim, and it does not guarantee payments over $300,000 in most instances. § 631.57(l)(a)(2). In the case of homeowner’s coverage, FIGA can cover $500,000 of damage to structure or contents. Id.
Although FIGA is not a substitute insurance company for the insolvent insurer, it is “deemed the insurer to the extent of its obligation on the covered claims, and, to such extent, shall have all rights, duties, defenses, and obligations of the insolvent insurer as if the insurer had not become insolvent.” § 631.57(1)(b).
Thus, to establish the “covered claim” that is used to determine the guaranteed payment by FIGA under section 631.57, one starts with an “unpaid claim” that arises out of and is within the coverage of the relevant insurance policy. § 631.54(3). The unpaid claim is normally determined using roughly the same adjusting procedures that would have been used by the insurance company if it had not become insolvent. In this adjusting process, FIGA has all of the “rights, duties, defenses, and obligations” that the insurance company had under the relevant insurance policy. See § 631.57(1)(b).
In the case of sinkhole coverage, a contractual “appraisal” method to adjust the claim has evolved alongside other statutory requirements. See Fla. Ins. Guar. Ass’n v. Branco, 148 So.3d 488, 491, 491-95 (Fla. 5th DCA 2014) (“Appraisals are creatures of contract and the subject or scope of appraisal depends on the contract provisions.”); § 627.7074, Fla. Stat. (2009) (providing for nonbinding, neutral evaluation as an alternative dispute resolution process for disputes over sinkhole coverage and loss). This “appraisal” is not similar to the normal “appraisal” process used to place a fair market value on a parcel of property. Instead, the appraisers often determine the nature of the sinkhole that is damaging the home and the appropriate repair method to address that specific sinkhole. The cost of subsurface and surface repairs is driven by the repair method that the appraisers select. It is my impression that the appraisers in this context *632 develop expertise and can more rapidly and efficiently evaluate these complex claims than could a jury of inexperienced lay persons.
Admittedly, the method of paying and the amount of the payment of a “covered claim” by FIGA may vary from the payments that would be made by the insurance company under the insurance contract but for the insolvency. Still, it seems to me that the appraisal mandated by the insurance policy is, in general, a logical and compatible method to help determine the “unpaid claim” that arises out of the insurance contract, which in turn is used to define the “covered claim” that ultimately measures the guaranty payment under section 631.57.[3] To a large extent, the amount normally payable under an insurance policy for a sinkhole claim and the cost of the “actual repair” of the loss are similar. To the extent that they differ, I do not understand why the appraisers cannot accommodate the difference. The fact that the FIGA payment is not paid directly to the policyholder and that the timing of the payment may vary does not seem to me to be a difference that renders the contractual appraisal process incompatible or unworkable when adjusting a covered claim that will be protected by FIGA.
If appraisal is not used to determine the unpaid claim in this context, then some other method must be used. The only other method I am aware of is trial by judge or jury. That does not seem to be a method that resolves the concerns about whether the payment is not made directly to the insured or when the payment is made. FIGA generally is not responsible to pay the attorneys’ fees of the homeowner. If the appraisal process does not apply when the insurance company becomes insolvent, the homeowner is unlikely to be able to afford to litigate the amount of an unpaid claim. The financial protection and the economic stability intended by the legislature in these statutes may be illusory if FIGA is not obligated to adjust sinkhole claims using the methods prescribed by the relevant insurance policy.

. Admittedly, my understanding of the appraisal process may not be entirely correct. My understanding of this process is limited because these appeals typically come to this court on interlocutory orders compelling appraisal. Since that is the case here, the record is sparse and does not have any transcript of an evidentiary hearing determining whether appraisal under the policy is or is not inconsistent with FIGA's responsibility to pay covered claims.