IN THE SECOND DISTRICT COURT OF APPEAL, LAKELAND, FLORIDA

December 31, 2014


THE CINCINNATI INSURANCE )
COMPANY, a foreign corporation doing )
business in the State of Florida, )
)
        Appellant, )
)
v. )     Case No. 2D14-827
)
CANNON RANCH PARTNERS, INC., )
a Florida corporation, )
)
        Appellee. )
_____ )


BY ORDER OF THE COURT:


Appellee's motion for clarification is granted. The prior opinion dated October 17, 2014, is withdrawn. The attached opinion is issued in its place which contains a change in the second to the last paragraph on page six. Appellee's motion for rehearing and alternative motion for certification are denied. No further motions for rehearing will be entertained.


I HEREBY CERTIFY THE FOREGOING IS A
TRUE COPY OF THE ORIGINAL COURT ORDER.



JAMES BIRKHOLD, CLERK

THE CINCINNATI INSURANCE ) 
COMPANY, a foreign corporation doing )
business in the State of Florida, )
)
        Appellant, )
)
v. )      Case No. 2D14-827
)
CANNON RANCH PARTNERS, INC., )
a Florida corporation, )
)
        Appellee. )
                                  )

Opinion filed December 31, 2014.

Appeal pursuant to Fla. R. App. P. 9.130
from the Circuit Court for Hillsborough
County; Sam D. Pendino, Judge.

Guy E. Burnette, Jr., of Guy E. Burnette, Jr.,
P.A., Tallahassee, for Appellant.

John J. Thresher and Kimberly D. Thresher
of Thresher and Thresher, P.A., Tampa, for
Appellee.

VILLANTI, Judge.

        The Cincinnati Insurance Company seeks review of the order denying its

motion to compel appraisal and abate litigation.[1]  Because the matter in dispute is one

subject to appraisal, we reverse and remand for further proceedings.

---

        [1]We have jurisdiction.  See Fla. R. Civ. P. 9.130(a)(3)(C)(iv).

Cincinnati Insurance insures a piece of commercial real property owned by Cannon Ranch Partners, Inc. The Cannon Ranch policy includes coverage for sinkhole damage. On August 14, 2012, Cannon Ranch discovered structural damage on its property and subsequently filed a claim with Cincinnati Insurance. Cincinnati Insurance sent a letter to Cannon Ranch confirming the receipt of the claim and advising that an investigator would inspect Cannon Ranch's property to determine the cause of the damage. The investigator hired by Cincinnati Insurance, AMEC Environmental and Infrastructure, determined that the damage was caused by a sinkhole. AMEC recommended that perimeter compaction grout and shallow chemical grout be applied to remediate the sinkhole activity at a cost of roughly $220,000. AMEC further determined that underpinning was not necessary to repair Cannon Ranch's property.

Cincinnati Insurance provided AMEC's report to Cannon Ranch. After reviewing AMEC's report, Cannon Ranch contacted Cincinnati Insurance to express concern that AMEC did not include underpinning in its repair recommendation and that AMEC was biased in its investigation because it had been hired by Cincinnati Insurance. In response, Cincinnati Insurance offered Cannon Ranch the opportunity to nominate a list of five investigators, one of which would be chosen by Cincinnati Insurance to conduct a second investigation. Using this method, C.E. Odell & Associates was hired to reinspect Cannon Ranch's premises. C.E. Odell conducted a survey and determined that underpinning was necessary in addition to the grouting procedure recommended by AMEC, and it estimated that the repairs would cost approximately $495,945.

At Cincinnati Insurance's insistence, a third company, Geohazards, conducted a peer review of the reports from both AMEC and C.E. Odell. Geohazards determined that underpinning was not necessary and furthermore that AMEC's testing was insufficient to establish that even shallow chemical grout was required to restore the property to its pre-sinkhole state.

Following its receipt of these divergent reports, Cannon Ranch entered into a contract with RAB Foundation Repair LLC to perform repairs, including underpinning, on the property consistent with the recommendations of C.E. Odell at an estimated cost of $566,755. However, according to its terms, the contract was contingent on Cincinnati Insurance's approval. Not unexpectedly, Cincinnati Insurance refused to approve the contract because the repairs were not based on the recommendations of AMEC or Geohazards. Instead, Cincinnati Insurance sent a letter to Cannon Ranch demanding an appraisal of the damage and citing the following provision from paragraph 2, Section D of the insurance policy:

> If we and you disagree on the value of the property, the amount of Net Income and operating expense, or the amount of "loss," either may make written demand for an appraisal of the "loss." In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property, the amount of Net Income and operating expense, and amount of "loss." If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
> a. Pay its chosen appraiser; and
>
> b. Bear the other expenses of the appraisal and umpire equally.

> <u>If there is an appraisal, we still retain our right to deny the claim.</u>

(Emphasis added.) Cannon Ranch refused to participate in the appraisal process and brought suit against Cincinnati Insurance for breach of contract. Cincinnati Insurance subsequently filed its motion to abate the litigation and compel appraisal.

At the hearing on the motion, Cincinnati Insurance argued that the disagreement on the appropriate method of repair and the estimated costs of restoration was a dispute over the amount of "loss" that was subject to appraisal under the terms of the insurance policy. In response, Cannon Ranch argued that the method of repair was a matter of coverage, which is exclusively a judicial question. Cannon Ranch also argued that Cincinnati Insurance had no right to appraisal under the policy because disputes over coverage do not trigger the appraisal clause found in paragraph 2, Section D of the insurance policy. The court denied the motion, finding that appraisal was not mandatory under the terms of the insurance policy. Cincinnati Insurance now appeals, arguing that the trial court erred in finding that appraisal was not mandatory due to the language of the insurance policy and that there was no right to an appraisal because the issue in dispute is one of the amount of loss and not one of coverage. We agree on both points.

First, the trial court erred in finding that appraisal was not mandatory under the language of the insurance policy. In its oral ruling, the trial court found that Cincinnati Insurance could not demand appraisal because the insurance policy's appraisal clause allowed Cincinnati Insurance to retain the right to deny the claim following a proper appraisal. While the trial court did not expound on the reasoning behind its decision, it could not have found the appraisal clause to be unenforceable

- 4 -

unless the clause violated either statutory law or public policy.  See Green v. Life & Health of Am., 704 So. 2d 1386, 1390-91 (Fla. 1998).  Cannon Ranch points to no statutes or public policy considerations that are violated by this "retained rights" provision.  Moreover, controlling Florida law permits "retained rights" provisions, and these provisions do not render the appraisal clause unenforceable.  See State Farm Fire & Cas. Co. v. Licea, 685 So. 2d 1285, 1288 (Fla. 1996).  Hence, the trial court erred to the extent it found that Cincinnati Insurance could not demand an appraisal due to the language of the appraisal clause being unenforceable as inconsistent or violative of public policy.

Second, the trial court erred in finding that there was no right to an appraisal because the issue in dispute is in fact one of the amount of loss and not one of coverage.  In Florida, "[a] challenge of [c]overage is exclusively a [j]udicial question." Midwest Mut. Ins. Co. v. Santiesteban, 287 So. 2d 665, 667 (Fla. 1973).  However, "when the insurer admits that there is a covered loss," any dispute on the amount of loss suffered is appropriate for appraisal.  Johnson v. Nationwide Mut. Ins. Co., 828 So. 2d 1021, 1025 (Fla. 2002) (quoting Gonzalez v. State Farm Fire & Cas. Co., 805 So. 2d 814, 816-17 (Fla. 3d DCA 2000)).  Notably, in evaluating the amount of loss, an appraiser is necessarily tasked with determining both the extent of covered damage and the amount to be paid for repairs.  Id.  Thus, the question of what repairs are needed to restore a piece of covered property is a question relating to the amount of "loss" and not coverage.  Ipso facto, the scope of damage to a property would necessarily dictate the amount and type of repairs needed to return the property to its original state, and an estimate on the value to be paid for those repairs would depend on the repair methods

to be utilized.  The method of repair required to return the covered property to its original state is thus an integral part of the appraisal, separate and apart from any coverage question.  Because there is no dispute between the parties that the cause of the damage to Cannon Ranch's property is covered under the insurance policy, the remaining dispute concerning the scope of the necessary repairs is not exclusively a judicial decision.  Instead, this dispute falls squarely within the scope of the appraisal process—a function of the insurance policy and not of the judicial system.  Therefore, Cincinnati Insurance acted within its rights when it demanded an appraisal, and the trial court erred in denying the motion on this basis.

Accordingly, we reverse the order denying the motion to compel appraisal and abate litigation and remand for the entry of an order compelling appraisal and abating the litigation.

Reversed and remanded with directions.

SILBERMAN and KELLY, JJ., Concur.