WALLACE, Judge.
Florida Insurance Guaranty Association, Inc. (FIGA), appeals a nonfinal order compelling appraisal concerning the repair of damages caused by a sinkhole to a residence owned by. Daniel Hunnewell and Heather Hunnewell (the Hunnewells). Based on this court’s recent decision in Florida Insurance Guaranty Ass’n v. de la Fuente, 158 So.3d 675, (Fla. 2d DCA Jan. 7, 2015), we conclude that the circuit court erred in determining that the Hunnewells were entitled to appraisal of their claim. In addition, we conclude that the Hunnewells’ activities in litigating their claim amounted to a waiver of appraisal. For these reasons, we reverse the order compelling appraisal and remand for further proceedings.
I. THE FACTUAL AND PROCEDURAL BACKGROUND
The Hunnewells discovered sinkhole damage to their residence on November 14, 2008, and they reported the loss to their insurer, HomeWise Preferred Insurance Company, on August 21, 2009. HomeWise responded to the claim by retaining SDII Global Corporation (SDII). SDII performed testing that reflected sinkhole activity at the residence. SDII recommended subsurface repairs consisting of deep-grout injection. A contractor completed the recommended subsurface repairs on February 23, 2010. HomeWise also extended coverage and tendered payment for cosmetic repairs based upon an estimate from Neumann Construction.
Unsatisfied with the repairs, the Hunne-wells retained a law firm, which in turn retained Florida Testing and Environmental (FTE) to perform a peer review of SDH’s report. FTE issued a report disputing the sufficiency of the repairs recommended by SDII and recommended that a system of underpinning be performed at a cost of $82,080.
HomeWise requested a neutral evaluation. Shortly thereafter, the Hunnewells filed the underlying lawsuit, which was stayed pending the neutral evaluation. The neutral evaluator, John R. Edwards, performed an evaluation and met with the parties at the Hunnewells’ residence on November 21, 2010. Mr. Edwards reported that additional settlement of the residence of 0.3 to 0.7 inches after the grout injection. was “possibly indicating minor structural movement attributed to the grouting activities.” According to Mr. Edwards, this minor movement was normal and to be expected. He had no basis to conclude that the grouting program was deficient or that an insufficient amount of grout had been used. Nevertheless, Mr. Edwards recommended that “a program of chemical grouting utilizing 2,500 pounds [of] expanding urethane foam be implemented to stabilize the shallow subsurface due to the presence of very loose and loose soil conditions within the upper 10 feet.” However, Mr. Edwards concluded that *990 “[t]here [was] no damage at the Hunnewell residence that [rose] to a level requiring underpinning.” After receipt of Mr. Edwards’ report, the Hunnewells proceeded with the underlying lawsuit. The Hunne-wells filed a notice for jury trial on May 1, 2011; the trial court set the case for trial on October 17, 2011.
On September 2, 2011, HomeWise went into receivership, and an automatic stay of the lawsuit went into effect. On November 4, 2011, HomeWise was declared insolvent. On December 12, 2011, FIGA notified the Hunnewells that it had assumed handling of their claim, including notice that the sinkhole loss claim would be handled in accordance with chapter 631, Florida Statutes (2011).
The Hunnewells served an amended complaint naming FIGA as the defendant on June 8, 2012. The amended complaint alleges that “HomeWise’s engineering firm unilaterally recommended certain subsurface remedial measures, which, according to [Appellees’] retained engineer, are structurally insufficient to properly and permanently repair and remediate the subsurface and foundation of the home.” The amended complaint further alleges that the Hunnewells signed a contract with Champion Foundation Repair Systems to perform the building stabilization recommended by their expert and demanded that FIGA authorize the repairs within ten days; The demand also included a cosmetic repair estimate in the amount of $76,245.14 from Triad Consulting Group. FIGA refused to authorize the additional repairs. In their amended complaint, the Hunnewells sought “general and special damages,” prejudgment interest, attorney’s fees, and expert witness fees.
FIGA answered the amended complaint on July 30, 2012, and alleged that it had not denied coverage to the Hunnewells and that it was ready to pay the Hunnewells for “actual repairs to the property” in accordance with section 631.54(3), Florida Statutes (2011). FIGA alleged that under section 631.54(3)(c), it was only obligated to pay for “the actual repair of the loss” and that it could not pay attorney’s fees or public adjuster fees or pay the policy holder directly.
After the parties engaged in some discovery, the Hunnewells served a motion to compel appraisal on June 21, 2013. FIGA objected to the demand for appraisal and filed a memorandum of law in opposition. FIGA argued (1) that appraisal was not an appropriate remedy to resolve the dispute over the correct method of repair; (2) that even if appraisal were appropriate for that purpose, it was inappropriate in the context of a sinkhole claim because under the 2011 amendment to section 631.54(3)(e), FIGA may only pay the contractor the cost for “actual repairs” and the “amount of loss” was to be determined as the repairs were performed; and (3)' that the Hunne-wells had waived any right to seek appraisal by their active litigation of the case to that point. The trial court entered an order compelling appraisal. In its order, the trial court did not make any findings of fact or law. This appeal followed.[1]
II. FRAMING THE ISSUES
The main issues for our review are these: (1) whether under the HomeWise policy the determination of the method of repair is appropriate for resolution under the policy’s appraisal process and (2) whether the Hunnewells waived any right to appraisal by engaging in litigation activities for an extended period before requesting appraisal. The issue of whether the Hunnewells were entitled to appraisal under the terms of their policy under the *991 2011 amendment to section 631.54(3) is controlled by this court’s decision in de la Fuente.
III. THE STANDARD OF REVIEW
With regard to an order compelling appraisal, we review the trial court’s factual findings under a competent, substantial evidence standard. Our review of the trial court’s application of the law to the facts is de novo. Where, as in this case, the trial court made no findings of fact or law, we apply the relevant law to the facts in the record. See Fla. Ins. Guar. Ass’n v. Castilla, 18 So.3d 703, 704 (Fla. 4th DCA 2009) (citing United HealthCare of Fla., Inc. v. Brown, 984 So.2d 583, 585 (Fla. 4th DCA 2008)); see also Fla. Ins. Guar. Ass’n v. Branco, 148 So.3d 488, 493 (Fla. 5th DCA 2014) (“Here, while the trial court made no findings of fact on the issue of waiver, the facts are not in dispute. Therefore, we review the waiver issue de novo.”). Our review of the question of the applicability of the 2011 amendment to section 631.54(3) to the Hunne-wells’ rights under the policy is a question of statutory construction that we review de novo. W. Fla. Reg’l Med. Ctr., Inc. v. See, 79 So.3d 1, 8 (Fla.2012).
IV. DISCUSSION

A. The Method of Repair as an Ap-praisable Issue.

As noted above, FIGA argues that the parties’ dispute over the method of repair is not an appraisable issue under the Hunnewells’ policy with HomeWise. More specifically, it argues that the policy’s appraisal provision, which only contemplates appraisal for disagreements about “the amount of loss,” does not apply when the disagreement is over the method of repair, which does not constitute a disagreement over “the amount of loss” within the policy.
This court recently addressed the “amount of loss” versus “method of repair” argument in Cincinnati Insurance Co. v. Cannon Ranch Partners, Inc., 162 So.3d 140, (Fla. 2d DCA Dec. 31, 2014). In Cincinnati, we stated as follows:
In Florida, a challenge of coverage is exclusively a judicial question. However, when the insurer admits that there is a covered loss, any dispute on the amount of loss suffered is appropriate for appraisal. Notably, in evaluating the amount of loss, an appraiser is necessarily tasked with determining both the extent of covered damage and the amount to be paid for repairs. Thus, the question of what repairs are needed to restore a piece of covered property is a question relating to the amount of loss and not coverage. Ipso facto, the scope of damage to a property would necessarily dictate the amount and type of repairs needed to return the property to its original state, and an estimate on the value to be paid for those repairs would depend on the repair methods to be utilized. The method of repair required to return the covered property to its original state is thus an integral part of the appraisal, separate and apart from any coverage question.
Id. at 142 (alterations in original omitted) (citations omitted) (internal quotation marks omitted); see also Branco, 148 So.3d at 492-93 (rejecting FIGA’s argument that a dispute over the scope and method of repair for a covered sinkhole claim constituted a coverage issue rather than an amount of loss issue and holding that such disputes were subject to appraisal). Because there was no dispute between the parties that the subject loss was covered under the insurance policy, we concluded that the remaining dispute about the scope and method of repair fell “squarely within the scope of the appraisal *992 process — a function of the insurance policy and not of the judicial system.” Cincinnati, 162 So.3d at 143.
Similarly in this case, FIGA has accepted the Hunnewells’ sinkhole claim; there is no coverage dispute here. The only controversy concerns the scope and method of repair. In accordance with our decision in Cincinnati we conclude that this issue concerns the amount of loss and is subject to appraisal. Accordingly, we find no reversible error based upon FIGA’s argument that the parties’ dispute about the “method of repair” is not subject to appraisal.

B. The Question of Waiver.

Alternatively, FIGA argues that the Hunnewells waived any entitlement to appraisal based upon their litigation activities. We agree.
The Fifth District recently issued three decisions in which it concluded in the context of sinkhole litigation involving FIGA that the insureds had waived their right to appraisal under their policies: Fla. Ins. Guar. Ass’n v. Reynolds, 148 So.3d 840 (Fla. 5th DCA 2014); Fla. Ins. Guar. Ass’n v. Rodriguez, 153 So.3d 301 (Fla. 5th DCA 2014); and Fla. Ins. Guar. Ass’n v. Maroulis, 153 So.3d 298 (Fla. 5th DCA 2014). Although the legal analysis in all three cases is nearly identical, the facts in Rodriguez are closest to the facts in this case.
In Rodriguez, the court observed that “[a] waiver of the right to seek appraisal occurs when the party seeking appraisal actively participates in a lawsuit or engages in conduct inconsistent with the right to appraisal.” 153 So.3d at 303 (citing Branco, 148 So.3d at 493). “[T]he primary focus is whether [the insureds] acted inconsistently with their appraisal rights.” Id. (second alteration in original) (quoting Branco, 148 So.3d at 493). In determining when appraisal becomes appropriate, the Rodriguez court further observed as follows:
Unlike arbitration, appraisal exists for a limited purpose — the determination of the amount of the loss. Until the insurer has a reasonable opportunity to investigate and adjust the claim, there is no disagreement (for purposes of appraisal) regarding the value of the property or the amount of loss to be appraised. An insurer that denies coverage does not need to seek appraisal before litigation because it would make no sense to say that the insurer was required to request ... appraisal on a loss it had already refused to pay. Absent contract language to the contrary, we see no reason why the insured should not have the same flexibility in eases when coverage is denied.
Id. (alterations in original omitted) (citations omitted) (quoting Branco, 148 So.3d at 494) (internal quotation marks omitted).
In Rodriguez, HomeWise acknowledged that the homeowners sustained a covered loss in February 2010, and thus, the court concluded that appraisal was appropriate at that time. Id. Thereafter the homeowners waited three years before demanding appraisal against FIGA. During that period, they “sued HomeWise and FIGA, filed several discovery requests against both, pursued other litigation activities, and never reserved their rights to appraisal.” Id. The court concluded that as a result of the long delay and the actions taken by the homeowners after coverage was conceded, the homeowners acted inconsistently with and waived their right to appraisal. Id.
Similarly in this case, HomeWise extended coverage to the Hunnewells on their 2009 claim and repairs were completed in accordance with the recommendation of SDII by February 23, 2010. It was at this point that the Hunnewells disputed *993 the sufficiency of the repairs performed and retained a law firm and FTE. Home-Wise sought neutral evaluation; the Hunnewells filed suit against HomeWise on November 3, 2010. There was no mention of appraisal in the complaint. The suit was stayed pending neutral evaluation, which was completed by November 21, 2010. Thereafter, the Hunnewells continued with the litigation, engaging in discovery and filing a notice for trial on May 10, 2011. The case was then set for trial on October 17, 2011. HomeWise went into receivership and was declared insolvent on November 4, 2011. FIGA notified the Hunnewells that it had assumed handling the claim on December 12, 2011. The Hunnewells made a demand against FIGA, requesting that it pay for the same repairs at issue when it filed suit against Home-Wise. Thereafter, the Hunnewells filed an amended complaint against FIGA on June 11, 2012. There was no mention of appraisal in the amended complaint. The Hunnewells engaged in discovery with FIGA, and they did not file a motion to compel appraisal until June 21, 2013, more than two-and-a-half years after filing suit against HomeWise on the very issue for which they sought appraisal. Under these facts and the analysis in Reynolds, Rodriguez, and Maroulis, we conclude that the Hunnewells waived their right to appraisal. See also Fla. Ins. Guar. Ass’n, Inc. v. Waters, 157 So.3d 437, 439-41 (Fla. 2d DCA 2015) (holding that the insured had waived her right to appraisal by actively litigating her claim for over two years).

C. The Impact of de la Fuente.

We conclude that the trial court also erred in entering the order compelling appraisal based on this court’s recent decision in de la Fuente. The provisions in the Hunnewells’ policy are the same as the provisions under review in de la Fuente. Under the analysis in that case, the definition of “covered claim” in the 2011 amendment to section 631.54(3) is applicable, and appraisal is unavailable under the amended statute to determine the amount of loss. de la Fuente, 158 So.3d at 678; see also Waters, 157 So.3d at 439 (citing de la Fuente for the foregoing proposition).
V. CONCLUSION
For the foregoing reasons, we reverse the order compelling appraisal and remand for further proceedings consistent with this opinion. As we did in de la Fuente, we certify the following questions to the Florida Supreme Court as questions of great public importance:
I. DOES THE DEFINITION OF “COVERED CLAIM” IN SECTION 631.54(3), FLORIDA STATUTES, EFFECTIVE MAY 17, 2011, APPLY TO A SINKHOLE LOSS UNDER A HOMEOWNERS’ POLICY THAT WAS ISSUED BY AN INSURER BEFORE THE EFFECTIVE DATE OF THE NEW DEFINITION WHEN THE INSURER WAS ADJUDICATED TO BE INSOLVENT AFTER THE EFFECTIVE DATE OF THE NEW DEFINITION?
II. DOES THE STATUTORY PROVISION LIMITING FIGA’S MONETARY OBLIGATION TO THE AMOUNT OF ACTUAL REPAIRS FOR A SINKHOLE LOSS PRECLUDE AN INSURED FROM OBTAINING AN APPRAISAL AWARD DETERMINING THE “AMOUNT OF LOSS” IN ACCORDANCE WITH THE TERMS OF THE HOMEOWNERS’ POLICY OF INSURANCE?
Reversed and remanded for further proceedings; questions certified.
NORTHCUTT and MORRIS, JJ., Concur.

. We have jurisdiction under Florida Rule of Appellate Procedure 9.130(a)(3)(C)(iv).