# Third District Court of Appeal
## State of Florida

Opinion filed August 18, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-1469
Lower Tribunal No. 20-4561
_____

**Heritage Property & Casualty Insurance Company**,
Appellant,

vs.

**Condominium Association of Gateway House Apts. Inc.**,
Appellee.

An appeal from a non-final order from the Circuit Court for Miami-Dade County, Mark Blumstein, Judge.

Link & Rockenbach, P.A., Kara Rockenbach Link, and David A. Noel (West Palm Beach); Rubinton Simms, P.A., Jeffrey A. Rubinton, and Veronica Dossat (Hollywood), for appellant.

Kula & Associates, P.A., Elliot B. Kula, W. Aaron Daniel, and William D. Mueller; Berger Singerman LLP, Michael J. Higer, Gina Clausen Lozier, and Christopher B. Choquette, for appellee.

Before HENDON, MILLER, and BOKOR, JJ.

MILLER, J.

Appellant, Heritage Property & Casualty Insurance Company ("Heritage"), challenges an order granting a motion to compel appraisal filed by its insured, the Condominium Association of Gateway House Apartments, Inc. (the "Association"). On appeal, Heritage asserts the trial court erred in finding the Association complied with all relevant post-loss provisions of the operative commercial property insurance policy, including a requirement it produce its "books and records" for copying and inspection. Discerning no such error, we affirm.

## BACKGROUND

After two of its buildings sustained hurricane-related damage, the Association filed a first-party property claim against Heritage. By means of a letter, Heritage "determined that the claimed damage was caused by [a hurricane], for which the policy provide[d] coverage," but, the damages fell below the applicable deductible. The Association then submitted two supplemental claims and requested appraisal, as provided for in the policy.

Relying upon the following post-loss conditions, Heritage requested condominium board meeting minutes for the preceding five-year period:

**3. Duties in the Event of Loss or Damages**

a. You must see that the following are done in the event of loss or damage to Covered Property:

2

. . .

> (6) As often as may be reasonably required, permit us to . . . examine your books and records . . . and permit us to make copies from your books and records.

Although the Association furnished over 2,500 pages of requested documents during the claims process, it did not produce meeting minutes.

The claims went unpaid, and over two years after reporting the initial loss, the Association filed suit in the circuit court. In a dual-count complaint, it sought to compel appraisal and recover damages for breach of the insurance contract. Heritage opposed appraisal, asserting the failure to produce meeting minutes was fatal to coverage under the policy. The Association countered by proffering its membership was comprised primarily of elderly residents. Consequently, it failed to achieve a quorum and had no meeting minutes. The trial court duly convened an evidentiary hearing on the issue, at the conclusion of which it rendered an order determining the Association's pivotal witness was credible, the board failed to conduct meetings due to an inability to obtain quorum, no meeting minutes were recorded, and all post-loss conditions were otherwise satisfied. The instant appeal ensued.

## STANDARD OF REVIEW

3

We review the factual findings in an order compelling appraisal for competent, substantial evidence and the application of law to those facts de novo. See Fla. Ins. Guar. Ass'n, Inc., v. Hunnewell, 173 So. 3d 988, 991 (Fla. 2d DCA 2015); Kennedy v. First Protective Ins. Co., 271 So. 3d 106, 107 (Fla. 3d DCA 2019).

**ANALYSIS**

Before a court is authorized to compel appraisal under an insurance policy, it must make a preliminary determination as to whether the demand for appraisal is ripe. Citizens Prop. Ins. Corp. v. Mango Hill Condo. Ass'n 12 Inc., 54 So. 3d 578, 581 (Fla. 3d DCA 2011). In this vein, until post-loss conditions "are met and the insurer has a reasonable opportunity to investigate and adjust the claim, there is no 'disagreement' . . . regarding the value of the property or the amount of loss" subject to appraisal. Citizens Prop. Ins. Corp. v. Galeria Villas Condo. Ass'n, Inc., 48 So. 3d 188, 191 (Fla. 3d DCA 2010).

Here, the central dispute is whether the court erred in determining the Association fully complied with its post-loss requirement to furnish its books and records for copying and inspection. Two principal sources of authority guide our analysis. The first is the policy of insurance and the second is the

4

Florida Condominium Act (the "Act"), codified in chapter 718, Florida Statutes.

It is axiomatic an insurance policy is an agreement and, in the absence of an applicable statute, subject to the construction principles that apply to any other species of contract. See Principal Life Ins. Co. v. Halstead, 310 So. 3d 500, 502 (Fla. 5th DCA 2020). Thus,

> The intent of the parties governs, but "[c]ourts should resort to complex rules of construction to determine coverage or the applicability of exclusions only when the language used in the policy is ambiguous or otherwise susceptible of more than one meaning. Absent such factors courts should apply the plain meaning of words and phrases used in a policy of insurance."

State Farm Fla. Ins. Co. v. Phillips, 134 So. 3d 505, 507 (Fla. 5th DCA 2014) (citation omitted).

Under the instant policy, the insured is contractually obligated to allow the inspection and copying of its existing books and records. The plain language requires no more. Heritage contends, however, that because the words "books and records" are undefined in the policy and the insured operates under a statutory duty to preserve meeting minutes, the policy provision implies such minutes must be produced as a precondition to coverage. In support of its position, it relies upon section 718.111(12)(a)(6), Florida Statutes, which requires a condominium association to maintain "[a]

5

book or books that contain the minutes of all meetings" as part of its official records within the state for at least seven years.

Although the policy does not expressly reference the Act, under Florida law, "insurance policies are deemed to incorporate applicable statutes, and conflicting policy provisions must give way." Fla. Farm Bureau Cas. Ins. Co. v. Cox, 943 So. 2d 823, 832 (Fla. 1st DCA 2006), quashed on other grounds, 967 So. 2d 815 (Fla. 2007) (citations omitted). Pursuant to "this presumption of incorporation, valid applicable laws existing at the time of the making of a contract enter into and form a part of the contract as fully as if expressly incorporated in the contract." 11 Richard A. Lord, Williston on Contracts § 30:19 (4th ed. 2021) (footnotes omitted). Contractual language is therefore interpreted in view of existing statutes, irrespective "of whether the agreement refers to the governing law." Id. (footnote omitted).

This line of authority does not, however, displace the well-established principle that "[w]hen a policy provision remains undefined, common everyday usage determines its meaning." Sec. Ins. Co. of Hartford v. Com. Credit Equip. Corp., 399 So. 2d 31, 34 (Fla. 3d DCA 1981) (citations omitted). Hence, the incorporation presumption "is generally applied in connection with contract 'construction' (determining the legal effect of a contract) rather than contract 'interpretation' (determining the meaning of words used in a

6

contract)," and Heritage offers no support for the proposition that an undefined term should be construed against the insured based on a statutory "definition" that is neither incorporated into the policy nor found in any applicable insurance statute. 11 Lord, supra (footnote omitted); see also Container Corp. of Am. v. Maryland Cas. Co., 707 So. 2d 733, 736 (Fla. 1998) (Where "policy language is susceptible to differing interpretations, it . . . should be construed in favor of the insured.") (citation omitted).

Further, like the policy, the relevant portion of the Act is clear.[1] The preservation of condominium association meeting minutes is mandated for a seven-year period. In this regard, the cited provision presupposes the existence of minutes, but is silent as to any duty to record minutes in the absence of a quorum. Thus, it cannot be used to engraft a post-loss obligation to produce nonexistent meeting minutes upon the policy.

Lastly, to the extent there is a dispute as to fact, deferring to the superior vantage point of the trial court in assessing witness credibility, as

---

[1] Heritage also argues section 718.112(2)(d)(1), Florida Statutes, requires unit owners to convene an annual meeting. This argument, not asserted below and raised for the first time on appeal in the reply brief, is unpreserved, thus, beyond our purview. See Manning v. Tunnell, 943 So. 2d 1018, 1020 (Fla. 1st DCA 2006) ("As a general rule, an appellate court cannot address claims raised for the first time on appeal.") (citation omitted); see also Hoskins v. State, 75 So. 3d 250, 257 (Fla. 2011) ("[A]n issue not raised in an initial brief is deemed abandoned and may not be raised for the first time in a reply brief.") (citation omitted).

7

we must, and remaining mindful that the scope of our review does not entail reweighing the evidence or substituting our judgment, we deem the findings below supported by competent, substantial evidence.  See Williams v. Nuno, 239 So. 3d 153, 156 (Fla. 3d DCA 2018); Evans v. Thornton, 898 So. 2d 151, 152 (Fla. 4th DCA 2005); Sinclair v. Sinclair, 804 So. 2d 589, 592 (Fla. 2d DCA 2002).  Thus, our analysis yields a single conclusion.  Had Heritage wished to require the Association to record meeting minutes as a condition of coverage, it could have easily so provided.  Accordingly, we decline to disturb the order under review.

Affirmed.